AVERY COMPANY ET AL., APPELLANTS, V. ROBERT M. HANKS ET AL., APPELLEES.

FILED JUNE 9, 1927. NO. 25731.

New Trial. Lack of diligence in producing evidence on a material issue in a cause on trial may be sufficient justification for the denial of a new trial in an independent suit in equity commenced during a subsequent term of court and based on the ground of newly discovered evidence.

APPEAL from the district court for Scotts Bluff county: J. LEONARD TEWELL, JUDGE. *Affirmed.*

*Raymond & Fitzgerald,* for appellants.

*Morrow & Morrow, Mothersead & York* and *Field, Ricketts & Ricketts, contra.*

Heard before GOSS, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

ROSE, J.

This is an independent suit in equity for a new trial of a former cause wherein the district court had rendered a decree foreclosing a mortgage for $15,000 on 80 acres of land described as the south half of the southwest quarter of section 12, township 21 north, range 55, Scotts Bluff county. The equitable pleas for a new trial are based on misconduct of the successful litigants in procuring the former judgment by fraud and on newly discovered evidence. The facts on which the present suit is based were

put in issue by answers of defendants herein.  After a lengthy trial in the second cause the district court entered a nonsuit.  From the dismissal plaintiffs appealed.

The appeal presents the cause for trial *de novo*.  Does the evidence show that plaintiffs are entitled to a new trial on the ground of newly discovered evidence after expiration of the term at which the former decree was entered? This is the question for solution and requires an examination of two complicated records.  The opinion, however, will necessarily be confined to a mere outline of the vital issues, proofs and circumstances.

The former suit was a proceeding in the nature of a creditor's bill and was commenced by the Avery Company to set aside a deed from Robert M. Hanks to Annettie B. Hanks, his wife, and to cancel a subsequent mortgage for $15,000 from them to the First National Bank of Gering, hereinafter called the "bank."  The land thus conveyed and mortgaged is the 80-acre tract in controversy.  The purpose of the creditor's bill was to subject the land to the payment of a judgment for $4,487.75, which the Avery Company had recovered against Robert M. Hanks and Will F. French, partners engaged in raising wheat and operating a garage.  Another judgment creditor also appeared as a litigant.  The defendants therein were the Hanks and also the bank and other secured creditors. The Avery Company pleaded that, for the purpose of defrauding it and of preventing it from collecting its judgment, the husband deeded the land to his wife, and that for the same purpose the parties to the deed subsequently mortgaged the land to the bank, an alleged participant in the fraud.  There were similar pleas by the other unsecured judgment creditor.  The Hanks and the bank denied the fraud charged.  The bank pleaded in substance that the mortgage for $15,000 was given to it in good faith as collateral security for debts aggregating more than $41,000, evidenced by notes of Robert M. Hanks or his partner and payable to the bank or officers thereof.  There was

a prayer for the foreclosure of the mortgage. Some of the notes collaterally secured had been transferred by the bank and the transferees appeared and asserted rights to the collateral security. Upon a trial of the issues in the former cause the district court found that the deed and the mortgage were fraudulent and entered a decree canceling those instruments and establishing in favor of the judgment creditors liens on the 80-acre tract in controversy.

From the decree in favor of the judgment creditors, the bank, the other litigants claiming the protection of the mortgage as collateral security and Annettie B. Hanks appealed. Upon a trial *de novo* the supreme court found in effect, in the first suit, that Annettie B. Hanks and the bank did not intend to, and did not, defraud the unsecured creditors of Robert M. Hanks, and also found that the mortgage for $15,000 was given and accepted in good faith as collateral security for the payment of *bona fide* debts evidenced by promissory notes on which Robert M. Hanks was liable as maker. Consequently the decree in the creditor's bill was reversed and the cause remanded to the district court, with directions to enter a decree foreclosing the mortgage, ordering a judicial sale of the land, applying the proceeds to the extent of $15,000, if realized, to the claims of the bank and its transferees, and the excess, if any, to the judgment of the Avery Company. The cause was remanded to the district court, where the decree thus directed was entered. At a subsequent term of the lower court the present suit in equity was begun to set aside the decree which the supreme court directed and to procure a new trial of the creditor's bill on the two grounds already stated—fraud of the prevailing parties and newly discovered evidence.

On the issues of fraud in the procuring of the first decree the evidence is wholly insufficient to sustain the charge and the trial court properly so found.

The newly discovered evidence pleaded as a ground for a new trial consisted principally of additional testimony

tending to prove that officers of the bank in procuring the mortgage for $15,000 joined with the Hanks in previously undisclosed oral and written agreements tending to show that the bank already had ample security; that officers of the bank appreciated former patronage from Robert M. Hanks, a depositor and borrower, and desired to reciprocate; that the real purpose of the mortgage was to protect mortgagors and prevent the seizure and sale of their mortgaged land by judgment creditors, referring particularly to the Avery Company; that the bank did not intend to foreclose the mortgage and that the lien thereof should not be released without the consent of the mortgagors.

This testimony and other details of a similar nature cover a considerable portion of the record, but do not necessarily establish the right to a new trial at a subsequent term of court. The issue of fact to which this evidence applied was, in the former suit, tried and adjudicated adversely to plaintiffs in equity in the second proceeding. If the failure to adduce it at the first trial resulted from the lack of proper diligence on the part of the unsecured judgment creditors, it was not sufficient at a subsequent term of court for the purpose of procuring a new trial. It would have been admissible in the former suit. The pleadings of the bank warned the judgment creditors to prepare for proof refuting the allegations of good faith in the transaction assailed as fraudulent. The principal witnesses who testified in the present suit to the facts under consideration were witnesses at the trial of the creditor's suit. They then knew what they stated at the second trial. At the former trial they had been asked on the witness-stand about the circumstances attending the execution of the mortgage and with full knowledge of the facts they then withheld the information by them disclosed at the next trial. On cross-examination in the present suit they testified they would have answered at the former trial, had they been asked, questions calling for the facts herein related by them. Diligence required the disclosure of this information

at the former trial and, in the second suit, it does not establish the right to a new trial at a subsequent term of court. In *Gutru v. Johnson, ante,* p. 309, the opinion contains the following language:

"If a litigant may neglect such obviously important inquiry — inquiry which would have so certainly resulted in complete information — with his lawsuit approaching, and then, after the suit has gone against him, repair the damage which his neglect has occasioned by a resort to equity, there can be no end to litigation. If by the exercise of reasonable diligence a defendant may produce certain evidence disproving the testimony of the plaintiff as to defendant's conduct and representations and tending to prove perjury on the part of the plaintiff, and through inertia or carelessness fails to do so, he cannot thereafter have the judgment in said suit set aside by the production of said evidence in an equity action for that purpose." Citing, *Secord v. Powers,* 61 Neb. 615; *Barr v. Post,* 59 Neb. 361; *Scudder v. Evans,* 105 Neb. 292.

In addition to the lack of diligence, there is a view in which the new evidence, in connection with other disclosed facts, indicates good faith in the execution and acceptance of the mortgage. It was given as collateral security. The mortgagors so testified at both trials. The notes collaterally secured represented actual debts owing by Robert M. Hanks, one of the mortgagors, to the bank. Other security held by it had been decreasing in value with general deflation. Capable bankers might have solicited additional security under the circumstances without intending to defraud other creditors. They could consistently promise to postpone foreclosure for a prospective improvement in farm values. A substantial motive for defrauding a judgment creditor without serving any pecuniary interest of their own was wanting. On their face the notes and the mortgage securing them collaterally imported good faith in the transactions. The validity of those instruments was regularly adjudicated against the judgment creditors in a contested case wherein the intention to defraud them

was a prominent feature. A decree of foreclosure fol-
lowed. Upon full consideration of the evidence in both
causes, the conclusion is that, in the present suit, the dis-
trict court properly denied a new trial.

AFFIRMED.