FRANCES GROSSE, APPELLEE, v. SIEGFRIED GROSSE, APPELLANT.

87 N. W. 2d 900

Filed February 7, 1958. No. 34321.

*Philip F. Nestor* and *Ginsburg, Rosenberg & Ginsburg,* for appellant.

*Robert S. Finn* and *Dwight Griffiths,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The subject of this litigation is a divorce, settlement of property rights, and statutory allowances. Appellee by an amended petition presented in substance these matters: The parties were married August 31, 1928. Their legal residence was Johnson County. The two children of the parties have attained more than legal age. Appellee has been faithful to and performed her marital and maternal obligations toward appellant and the children of the parties. Appellee has performed without assistance the duties of caring for the household of the parties in a proper manner and has for a period of about 24 years assisted appellant in the operation of the business managed by him by performing office work, keeping books containing the records of the business, waiting on customers, and frequently doing the character of work that a male employee would have done in connection with the business. Appellee contributed as much effort and service as appellant did in the acquisition and accumulation of the property owned by the parties to this cause. Appellant has, in disregard of his obligations to appellee, indulged in cruel and inhuman conduct, both physical and mental in character, toward appellee. Specifically, appellant on the evening before Mother's Day about 3 years before the commencement of this action, on Labor Day about 2 years before this case was instituted, and on January 11, 1957, assaulted,

struck, beat, wounded, and injured appellee. The mental cruelty inflicted by appellant on appellee consisted of profane and abusive language, unnecessary display of jealousy without reason therefor, untruthful charges of improper conduct of appellee, the absenting of appellant from the home of the parties especially at night and his irregular times of return, sullenness, and complete disregard by appellant for the home life of the parties. Appellant, after each of the first two assaults and beatings inflicted upon appellee as stated above, importuned her forgiveness and appellant made promises he would not again be unkind or cruel to her. Appellant begged appellee to remain in the home and continue as his wife. Appellee on each occasion accepted the request of appellant and his representations and promises of good behavior as sincere. She relied thereon, remained in the home of the parties, and resumed and continued to live with appellant as his wife. Misconduct of appellant toward appellee caused her to become disabled in body and mentally ill with the result that she could no longer continue as the wife of appellant. The parties by their joint efforts since their marriage accumulated and acquired real and personal property of the value in excess of $100,000. Appellee asked the court to award her an absolute divorce, an equitable property settlement, and statutory allowances.

The answer of appellant to the amended petition of appellee admitted the marriage and residence of the parties as stated by her and that they were not the parents of any child of less than legal age. Appellant alleged appellee had been guilty of the same misconduct toward him as she had charged against him. He said she had a violent and ungovernable temper, had on many occasions attempted to inflict injury on the body of appellant by beating and hitting him with various objects, and had forced him to protect himself from an assault by her. He charged that appellee had been quarrelsome and abusive; that she had made untrue

accusations concerning the conduct of appellant without provocation or basis of fact; and that appellee had frequently indulged in excessive use of alcoholic liquors to the embarrassment, concern, and anguish of appellant. The facts pleaded, asserted the appellant, precluded appellee from a divorce or any equitable relief.

The contents of the cross-petition of appellant are not required to be recited because no evidence was offered at the trial in support thereof.

The reply of appellee denied the affirmative allegations of the answer of appellant except the admissions therein.

The trial of the case resulted in a decree in favor of appellee, the settlement of the property rights of the parties, an award of property and alimony to appellee, and an allowance of compensation for her counsel. A motion for a new trial made by appellant was denied and he by this appeal contests the correctness of the judgment of the trial court.

Appellant was not present nor did he offer his testimony in any manner at the trial of the case. He was represented by counsel and they participated for appellant in the trial by making a statement at the commencement thereof, making objections to evidence offered by appellee, cross-examining the witnesses presented by her, entering into stipulations, and calling and examining a witness on behalf of appellant. There was no objection by appellant as to the time of the trial and no application by him for a delay or postponement of the time of the trial of the case. His absence from and nonparticipation personally in the trial were deliberate and with knowledge of all pertinent facts. His counsel in the statement made at the opening of the trial stated, according to a showing contained in the record, that appellant would probably not appear and would probably not offer any evidence in support of his answer and cross-petition because he did not wish to embarrass his wife by presenting evidence in support of his allega-

tions. Counsel for appellant then stated that he assumed that since the evidence would not be contradicted by appellant, the appellee would be awarded a divorce.

Appellant, after the district court had rendered a judgment in the case adverse to him, made application for leave to withdraw his rest made at the conclusion of the trial and for permission to produce additional evidence. The reason given by him for not presenting all the evidence he had at the trial was that he was induced to refrain in that respect because he was improperly influenced by appellee. He asserted he had evidence to establish the statements of his pleading but he did not present it at the trial because of representations and assurances made to him by his wife that if he would not appear or produce evidence of his alleged defense and cross-action, she would effect a reconciliation with him but if he did there would be no possibility of a reconciliation of the parties. He said these were made to and did induce him not to personally appear and participate in the trial and that appellee intended not to honor the promises, representations, and assurances previously given him but that she intended to and did defraud him. Immediately after judgment in the case was rendered appellee refused to permit appellant to be in her presence and advised him that she would have nothing to do with him in the future.

The trial court denied the leave and permission requested by appellant. He raised the alleged misconduct of appellee at the trial in his motion for a new trial of the case. The motion was overruled. Appellant made a showing and offers of proof tending to establish the promises, assurances, and representations alleged to have been made by appellee in this regard but he was not in any way corroborated. She denied the claims of appellant. Appellee presented evidence of numerous persons that appellant had stated to each of them that he did not intend to and would not attend the trial of the case. Appellant complains of the denial by the court

of his application for permission to withdraw his rest and produce additional evidence in the case and the denial of his motion for a new trial as constituting prejudicial error.

Kasai v. Kasai, 160 Neb. 588, 71 N. W. 2d 105, was an action for divorce. The defendant therein was the husband of the plaintiff. He was represented by counsel, filed an answer and cross-petition, and he and his counsel were present in court on the morning of the day the case was to be tried. He caused his attorney to withdraw his appearance and defendant withdrew his answer and dismissed his cross-petition. At the request of the attorney for the wife it was expunged from the record. The wife was granted a divorce and property was awarded her as she claimed in her petition. The defendant within 6 months made an application in the case to have the judgment set aside because, as he alleged, it was obtained by the fraud of the wife and by perjured testimony. The parties had negotiated the day of the judgment before it was rendered. They disagreed as to what was said. The court denied the application of the husband. It is related in the opinion: "There is no corroboration whatever for defendant's story. All later circumstances tend to support the one told by plaintiff. For example, the decree entered on the very day of the alleged promise quieted title to all the property in plaintiff. This was contrary to what plaintiff had promised if defendant's story is true * * *. Where a default has been regularly entered, as it was in this case, it is largely within the discretion of the trial court to say whether the defendant shall be permitted to come in afterwards and make his defense and, unless an abuse of discretion is made to appear, this court will not interfere."

The reason given by appellant at the commencement of the trial for his personal nonappearance was that he "did not wish to embarrass plaintiff by offering evidence in support of his allegations." This is the only reason

he assigned therefor until after the judgment was rendered. The following statement from the case above quoted is appropriate here: "Defendant's statement that plaintiff's reason for promising to pay him $10,000 to withdraw was her desire to avoid a scandal questions itself when it is remembered that he had already filed in the clerk's office, open to public inspection, his cross-petition containing all of the scandalous material that he relied upon and there was no way she could have been relieved of scandal."

If an issue of fact exists in a pending case, a litigant must anticipate that his adversary will produce proof to establish the averments of his pleading and that he desires to obtain and keep what he has asked the court to give him. The litigant may not deliberately withhold proof he has or knows of and take his chances on a favorable result until an adverse judgment has been rendered against him and then successfully seek a further trial of the issue. It is the policy of the law to give every litigant an opportunity to prosecute or defend his case in court. If he has had an opportunity to do this and deliberately or negligently does not avail himself of it, he cannot obtain a retrial or a further hearing in the case. The law will not generally intervene to assist a litigant who has not exercised due diligence to prevent the results of which he complains and which were attributable to his own fault or negligence. This court said in Davies v. DeLair, 148 Neb. 395, 27 N. W. 2d 628: "But there must be an end to litigation and therefore there is an obligation on the part of litigants to prepare for the trial and to be ready to meet the issues when tried and if they fail to do so they cannot later be heard to complain." See, also, Secord v. Powers, 61 Neb. 615, 85 N. W. 846, 87 Am. S. R. 474; Kielian v. Kent & Burke Co., 131 Neb. 308, 268 N. W. 79; Roberts v. Roberts, 157 Neb. 163, 59 N. W. 2d 175. The character of the case and the primary relief sought were the antithesis of reconciliation. The conduct of

appellee in prosecuting the case was a warning to appellant which he could disregard only at his peril that appellee had no desire for or intention of a reconciliation. The court did not abuse its discretion in denying appellant leave to withdraw his rest or in deciding that appellee was not guilty of misconduct in the trial of the case.

It is argued by appellant that the trial court was wrong in excluding the interrogatories propounded by appellant to appellee and the answers thereto made by her. There were 10 interrogatories. Appellee answered several of them and she timely filed written objections to each of the unanswered interrogatories. Appellant offered in evidence the interrogatories and the answers to the ones to which appellee responded. Appellee objected that the use of interrogatories is limited by statute, that the offer was improper because appellee was present, that she had been examined and cross-examined, and that she was available for any further proper examination. Whereupon counsel for appellant stated to the court: "My purpose in offering the interrogatories was that there were ten interrogatories, and she saw fit to answer only six of them." Counsel for appellee then advised the court that appellee had filed objections to the interrogatories not answered and the objections had not been heard or decided. The court excluded the offer made by appellant. The testimony of appellee when she was examined and cross-examined agreed with the answers she gave to the interrogatories to which she responded. The conclusion is justified that the purpose of the offer was to cross-examine appellee concerning the unanswered ones. This would not have been proper procedure. Section 25-1267.37, R. R. S. 1943, provides in part that answers to interrogatories to which objections are made shall be deferred until the objections are determined. Appellant could have examined appellee as a witness on any pertinent subject. In any event the record in this case fails to indicate that

appellant suffered any prejudice because the offer was rejected.

Appellant complains that the trial court unduly restricted the cross-examination of appellee. The basis of this is that the court sustained objections to inquiries made of appellee during the cross-examination concerning conversations between appellant and appellee relating to the subject of a reconciliation of the parties. The objections were that it was not cross-examination because the inquiries had no relation to the direct examination of the witness; that they concerned no issue in the case; and that they were not competent, relevant, or material. There was no mention of the subject of the inquiries during the direct examination of the witness and consequently the objection on that ground was valid. Appellant says in argument that appellee said she had no conversation with appellant after the incident of January 11, 1957. This is an inaccurate estimate of her testimony. What she said was that there was no conversation by the parties concerning the incident of January 11, 1957, after it happened and not that they had not conversed at all after that event. There was no statement in or any issue of reconciliation made by the pleadings in the case. Abuse of discretion by the trial court in its action in this respect does not appear from the record. It was not permissible for appellant to pursue a collateral matter as a basis of subsequent contradiction or impeachment of the witness. The opinion in Griffith v. State, 157 Neb. 448, 59 N. W. 2d 701, declares: "If a witness is cross-examined on a matter collateral to the issue he cannot as to his answer be subsequently contradicted by the party putting the question. * * * The trial court in this instance strictly observed and properly applied the rule of practice that a party should not be permitted to cross-examine a witness as to a matter foreign to the scope of his direct examination. * * * The rule of strict cross-examination has been adopted and is in force in this state. The rul-

ing of the trial court in regard to the scope of cross-examination will be sustained unless it is an abuse of discretion." Appellant was not unduly restricted in the examination of appellee in the respect urged by this assignment.

It is asserted by appellant that there was error in the action of the court in refusing the offer in evidence of a document referred to in the record as "Schedule C." It is said, but not otherwise verified, that this was a part of a copy of the 1956 income tax return of the Grosse Produce Station. Schedule C did not purport to be an original instrument. It was unsigned. The original was not accounted for or shown not to be available. There was no proof that if there was an original it was executed by any person. These matters were likewise true as to the alleged instrument or document of which Schedule C was said to be a part. The hypothesis of appellant is that the instrument offered was admissible because the inquiry propounded the witness was: "You supplied those figures to your husband, didn't you?" Her answer thereto was: "Yes, they look familiar." The witness first saw the instrument when it was shown to her in the course of her examination. She testified that she did not recognize or identify the figures contained in the instrument as any within her knowledge, that she could not say she knew that they were correct, and that she had never seen the 1956 income tax return made by the Grosse Produce Station. The offer was secondary evidence without compliance with the legal foundational requirements. These were recorded in National Fire Ins. Co. v. Evertson, 153 Neb. 854, 46 N. W. 2d 489, as follows: "The receiving in evidence of a copy of a written agreement as secondary evidence is erroneous in the absence of proof that the original was in fact executed, that the original is not available, and that the offered instrument is a true copy thereof." See, also, Powell v. Anderson, 147 Neb. 872, 25 N. W. 2d 401. The foundation was not sufficient to require the

court to receive in evidence the instrument designated "Schedule C."

The specifications of the motion of appellant for a new trial discussed by him on this appeal have each been considered and disposed of in the foregoing. The other assignments of the motion have been considered in connection with the contents of the record. This appeal must be considered and decided de novo upon the record by this court without being influenced by the findings or action of the trial court. The conclusion on this phase of the appeal is that the action of the trial court is correct in refusing to grant appellant a new trial of the case. Jensen v. John Hancock Mutual Life Ins. Co., 145 Neb. 409, 16 N. W. 2d 847, was an action for a new trial because of alleged newly discovered evidence. The court appropriately remarked therein: "Applications for a new trial are entertained with reluctance and granted with caution, because of the manifest injustice in allowing a party to allege that which may be the consequence of his own neglect in order to defeat an adverse verdict * * *."

The primary objective of this litigation was to obtain an adjudication divorcing appellee as the wife of appellant. The record contains a considerable volume of evidence attributing serious misconduct and inexcusable omissions of appellant in support of the charge and conclusion of extreme cruelty inflicted by him upon appellee. This court is relieved from an extensive and detailed recital in this regard because there is no issue on this appeal that the award by the district court of an absolute divorce is not sustained by the evidence. A reference to the proof as to three incidents will be sufficient on this phase of the case. The substance concerning these as related by appellee at the trial July 8, 1957, is as follows:

The first occurred 4 years ago on the Saturday night before Mother's Day. The parties had worked at their place of business that day and until about 11 p. m.

They drove around in their automobile for a time before going home. When they arrived there and were closing the garage doors appellant without warning struck appellee. She got away from him and reached the outside door of the home. Appellant grabbed her, threw her out into the yard, and injured her so that she could not get up from where she was prostrate on the ground. Appellant left her and entered the home but soon returned to where she was and demanded that she get up, stating to her that she was not hurt. When she did not respond to his command he kicked her. He left her a second time and went into the house. Later he returned and helped her up. She had a fractured collar bone and bruises. She was taken to a doctor the next morning where she was examined and an X-ray was taken. She was assisted during her recuperation period of 6 weeks by a doctor and a neighbor, Mrs. Suhr.

The second of the incidents referred to above happened 2 years ago last Labor Day when the parties were returning from a fishing trip and when they were about a mile from Tecumseh. Their wedding anniversary was the day before. Appellant purchased for appellee a deep fryer at Auburn about a week before which he had been promising to do for some 10 years. Appellee did not show much interest in the gift. He remarked as they were driving along the road that she did not like her present. She replied that she would have liked it better if he had bought it at Tecumseh where they lived and were in business. He brought the automobile to a stop and said: "That's it," and struck her. She got out of the car. He came after her. She had a flashlight in her hand and she hit him with it. She walked home a mile west and a mile north. He attempted to overtake her. She was fearful of further violence and injury and to avoid him she got under a fence and hid. She suffered a black eye, a substantial cut on the back of her head 2 or 3 inches in length,

and bruises from the violence of appellant on that occasion. The cut on her head bled profusely. She had blood on her head, face, and clothing. Her hair was matted with blood. Mrs. Suhr, her neighbor, came to the home of appellee and assisted her. She washed off the blood, cut the hair from around the wound on her head, and administered medication. It required 3 or 4 weeks for appellee to recover from her injuries. During that time she did not leave the home.

Appellant after each of the attacks he made on appellee as above related importuned and begged her to forgive him and he assured her he would not hit or wrong her again. She believed, relied upon, and accepted what he said as sincere and because thereof she continued to live with him as his wife.

The last of the three incidents was on the night of January 11, 1957, in their home. Appellant left the home after the evening meal. Appellee finished her household duties and retired. She was asleep when he returned in the early hours of the morning. The noise he made awakened her. She arose and went to the room where he was. She was greeted with a motion like he was going to strike her. When she came to she was on the davenport covered with blood and appellant was on the floor with a pan of water washing up blood which had flowed from her injuries. The room was a large one, 18 feet square. The davenport was on the east. There was a table in the center of the room. She found her upper denture in the northwest corner of the room, fractured in pieces. Her watch was on the floor under the table in the center of the room and it had stopped at 1:20 a.m. She was knocked unconscious. She had a large cut on the front of her head slightly to the right and just above the hairline. It was about 3 inches long and quite deep. Her right eye was black and the left side of her face mutilated down into her neck. The left eye was full of blood. The left side of her face became black and swollen. She

suffered a severe injury to her cheekbone. Appellant left her in that condition and went to bed. She did what she could to care for herself. Mrs. Suhr came to the home of appellee and assisted in caring for her. She consulted a doctor and a dentist repaired her denture. Appellee did not leave her home for 5 weeks because of her injuries. She testified it was habitual with and characteristic of appellant not to threaten violence or to give warning before striking her.

Appellee was abundantly corroborated by her neighbor, Mrs. Suhr, the doctor, and the dentist. The parties did not associate after January 11, 1957, as husband and wife. Appellee refrained from taking legal action at once because her son and his family were coming home for a last visit before he was to leave for overseas duty as a member of the United States Air Force. The separation was effectuated February 19, 1957, and on that date this litigation was commenced. The evidence sustained the adjudication of the district court awarding appellee an absolute divorce from appellant.

The parties were without property at the time of their marriage. The acquisitions and accumulations of property that have been made during the almost 29 years of the marriage were the result of the labor, effort, and contributions of each of them. There are variations in the estimate of the value of the different parts of the property. The appellee does not seek to have the award made to her in the settlement of the property matters by the trial court disturbed. She asks that the judgment be affirmed by this court except she seeks a determination of the ownership of the crops growing on the 240-acre farm awarded to her at the time the judgment was rendered in this case. Appellant contests the award made appellee as too much. A review by this court convinces that the findings and conclusion of the district court in making division of the property between the parties and in awarding alimony to appellee are just and equitable and they are adopted and made the find-

ings and conclusion of this court except the judgment should be and it is modified to provide that appellee shall have and enjoy as her property the crops growing on the land awarded to her at the time the judgment was rendered or the proceeds of them in the event they have been disposed of or converted. The judgment should be and it is affirmed as modified. Allowance should be and is made as compensation for the services of counsel for appellee in this court in the amount of $1,000 which should be and it is ordered to be taxed as a part of the costs, and all costs in this court are taxed against appellant.

AFFIRMED AS MODIFIED.