IN RE ESTATE OF VIGGO ERLING CHRISTENSEN, DECEASED. SHIRLEY STONE, APPELLANT, V. VERA M. BRAUNER, PERSONAL REPRESENTATIVE OF THE ESTATE OF VIGGO ERLING CHRISTENSEN, DECEASED, ET AL., APPELLEES.

381 N.W.2d 163

Filed February 14, 1986.   No. 84-536.

James G. Egley of Moyer, Moyer, Egley & Fullner, for appellant.

James C. Stecker of Robak and Stecker, for appellees.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

Shirley Stone appeals the judgment of the district court for Platte County affirming a county court judgment denying Shirley's motion to set aside the order admitting the will of Viggo E. Christensen to probate.

On April 22, 1983, Viggo Christensen executed a self-proving will, and died on June 22. Vera M. Brauner, Viggo's niece and nominated as personal representative by the will, filed a petition on July 6 for formal probate of Viggo's will and listed 21 persons, including Shirley Stone, also Viggo's niece, as heirs, devisees, and interested parties. As reflected in the "Schedule of Heirship" accompanying the petition for probate, Viggo left neither a spouse nor child surviving him, but left two sisters, a brother, several nieces and nephews, and one grandnephew, Lyle Brauner. According to his will, Viggo left a quarter section of land to Lyle Brauner and the rest of his property to his sisters and brother.

Proper notice of the hearing scheduled for August 3 regarding admission of Viggo's will to probate was issued and was received by Shirley Stone, who also received a copy of Viggo's will submitted for probate. Shirley visited with her cousins about Viggo's will and contacted a lawyer whom she instructed to contest Viggo's will, but no objection on behalf of Shirley or any other interested party was filed.

On the morning of August 3, during the hearing, Shirley learned that no objection to Viggo's will had been filed, but Shirley and her lawyer voiced no objection to continuation of the proceedings. As a result of the hearing, Viggo's will was admitted to probate on August 3. On September 1 Shirley's lawyer withdrew from the case. That same day another lawyer, on behalf of Shirley, filed a motion to vacate the August 3 order admitting Viggo's will to probate and to permit instanter filing of a pleading attached to the motion, namely, an "Answer to Petition for Formal Probate of Will, Determination of Heirs and Appointment of Personal Representative, and Objections to Probate of Will." In her tendered answer and objection, Shirley alleged that Viggo lacked testamentary capacity and that Viggo's will resulted from fraud and undue influence by Vera Brauner, Lyle Brauner, and unnamed other persons.

Shirley also alleged that Viggo, when he executed his will, had received "massive doses of morphine and other drugs administered to ease the excruciating pain of his last illness which impaired the mind of the testator as to make him incompetent to execute his will." On November 29 the county court denied Shirley's motion to vacate the August 3 order. Shirley appealed to the district court, which affirmed the county court's judgment denying Shirley's motion to vacate the order admitting Viggo's will to probate.

Neb. Rev. Stat. § 30-2437 (Reissue 1979) provides: "For good cause shown, an order in a formal testacy proceeding may be modified or vacated within the time allowed for appeal." The time statutorily allowed for appeal from an order in formal testacy proceedings is 30 days. See Neb. Rev. Stat. § 25-1931 (Reissue 1979). Shirley's motion was timely filed, so that the sole issue is whether the motion should have been sustained.

In *DeVries v. Rix*, 203 Neb. 392, 403-04, 279 N.W.2d 89, 95 (1979), this court arrived at the meaning of "good cause shown" in reference to § 30-2437, and held:

> To equate "good cause shown" with a "showing of due diligence" is hardly a liberal construction of the term "good cause shown." Proponents would have us deny contestant the opportunity to prove the allegations made in his motion to vacate, timely filed within the literal interpretation of the appropriate statute, which, if true, would compel a finding of no valid will. To do this, recognizing that the will was admitted to probate without hearing or formal proof of due execution, could hardly be said to encourage the policy "to discover and make effective the intent of a decedent in distribution of his property."
>
> Webster's Third New International Dictionary defines "good cause" as "a cause or reason sufficient in law; one that is *based on equity or justice* or that would motivate a reasonable man under all the circumstances." (Emphasis supplied.)
>
> The meaning of good cause must be determined in light of all of the surrounding circumstances. Therefore, without regard to its use in the nonclaim situation, which

is inapplicable here, it is our opinion that good cause as used within the provisions of section 30-2437, R.R.S. 1943, means a logical reason or legal ground, based on fact or law, why an order should be modified or vacated. Contestant advanced such reasons or grounds in his motion within the limited time specifically provided by statute, and which if proven true, would require the vacation of the particular order attacked. He should have had an opportunity to present his evidence.

"Good cause" was construed by the Supreme Court of Colorado in *Craig v. Rider*, 651 P.2d 397 (Colo. 1982), where Craig filed a motion to vacate an order admitting a will to probate, alleging the decedent lacked testamentary capacity and was under undue influence when the decedent executed the will in question. In *Craig v. Rider, supra,* the court adopted three criteria to be considered in evaluating discretionary action disposing of a motion to set aside an order admitting a will to probate—whether neglect is excusable, whether a movant has alleged a meritorious objection to admission of a will to probate, and whether prejudice results from setting aside the probate order. As expressed by the court in *Craig v. Rider, supra* at 403, 405-06:

> The reasons for a rule of liberality in evaluating promptly filed motions to set aside default judgments are especially compelling as applied to motions to set aside orders admitting wills to probate. Persons interested in the estate of a decedent may not be intimately acquainted with the facts bearing on the grounds for a possible will contest. A challenge to a will is not a matter to be undertaken lightly, yet the Colorado Probate Code requires only ten days notice of a petition for formal probate to be given to an interested party. . . . This is a short time within which to arrange for legal counsel, conduct any necessary factual investigation, and make a considered decision whether a will contest should be undertaken. [Citation omitted.]

> . . . .

> . . . We conclude that the record contains sufficient allegations of a meritorious objection to admission of the will to probate and is devoid of any indication that

prejudice would result from setting aside the order of probate and hearing Linda Lou Craig's objections to probate of the will on their merits. The critical inquiry is whether the trial court abused its discretion in determining that Linda Lou Craig had not satisfied the excusable neglect criterion by demonstrating a sufficient reason to justify her failure to object to the . . . will until after it had been admitted to probate.

. . . .

. . . [A] rule of liberality is to be applied in evaluating promptly filed motions to set aside default judgments, and particularly orders of probate. We conclude that the burden of inquiry and promptness of decision that the trial court considered necessary do not comport with the excusable neglect standard, especially when considered in the light of the rule of liberality appropriate here.

. . . .

. . . [W]e believe that the trial court abused its discretion in holding that the delay in filing the will contest was not excusable. . . . In reaching this conclusion we are impressed by the brevity of the delay, the distance between the Craigs' home and Grand Junction, the absence of close contact between the Craigs and the decedent, their lack of intimate familiarity with her mental condition, the rather extensive efforts the Craigs made to learn the facts after receiving the notice of probate, the need to engage legal counsel to institute a will contest, and the seriousness of the decision to object to the probate of a will.

From issuance of the notice of hearing for admission of Viggo's will to probate until the hearing on August 3, Shirley had approximately 1 month to investigate and verify circumstances surrounding Viggo's execution of his will. Considering the criteria—whether neglect is excusable, whether a movant has alleged a meritorious objection to admission of a will to probate, and whether prejudice results from setting aside the probate order—and liberally construing "good cause," we conclude that there was an abuse of discretion in denying Shirley's motion to vacate the order admitting Viggo's will to probate. Under the circumstances any personal neglect on the

part of Shirley in failing to file an objection to the admission of Viggo's will to probate is excusable. Shirley has alleged a meritorious objection to admitting Viggo's will to probate, if her averments regarding testamentary capacity and undue influence can be established. There is no indication of prejudice resulting from giving Shirley an opportunity to substantiate her objections to the will. Shirley has shown "good cause" under § 30-2437. See *De Vries v. Rix*, 203 Neb. 392, 279 N.W.2d 89 (1979).

In view of the abuse of discretion in refusing to set aside the order of August 3, 1983, we, therefore, reverse the judgment of the district court and remand this matter to the district court with direction that the August 3, 1983, order of the county court shall be set aside for further proceedings regarding admission of the last will and testament of Viggo Christensen to probate.

REVERSED AND REMANDED WITH DIRECTION.