REQUESTED BY: Roberta S. Stick, Executive Director, Nebraska Equal Opportunity Commission
QUESTION: What procedure should be used by the NEOC to determine what constitutes "good cause shown" for purposes of § 48-1118(3), and who shall be the decision maker regarding the good cause shown?
ANSWER: "Good Cause" must be determined on a case-by-case basis, in light of all the surrounding circumstances, by the executive director.
The Nebraska Supreme Court has had occasion to define "good cause" (in the context of a statute dealing with probate) as "a logical reason or legal ground, based on fact or law." The Supreme Court emphasized that the meaning of good cause is to be determined "in light of all of the surrounding circumstances."In re Estate of Christensen, 221 Neb. 872, 874,381 N.W.2d 163, 165 (1986). In another context (a criminal case considering an extension of time for preparation of bill of exceptions for good cause shown), the Court defined "good cause" as the intervention of something beyond the control of the litigant. Bryant v. State, 153 Neb. 490,45 N.W.2d 169, 171 (1950). The Court has also cited to Webster's Third New International Dictionary to define "good cause" as "a cause or reason sufficient in law; one that is based on equity or justice or that would motivate a reasonable man under all the circumstances." Christensen 221 Neb. at 874,381 N.W.2d at 165, In re Corbett's Estate, 203 Neb. 392,403, 279 N.W.2d 89, 95 (1979).
Since the Legislature did not include a definition of "good cause" in the statute § 48-1118(3), it obviously left the determination of what constitutes good cause to the discretion of the agency. There are no set criteria for determining what is good cause, but ordinary prudence should lead the fact finder to determine whether the good cause shown is a legally sufficient ground or reason. As outlined in the statute, it is the executive director who is the decision maker regarding good cause shown.
QUESTION: What are the legal implications for the NEOC if it enters a finding of reasonable cause by default on cases in which no written response was filed with the NEOC within 30 days after service and no finding of good cause has been made?
ANSWER: None. The statute states "(f)ailure to file a written response within 30 days, except for good cause shown, shall result in a mandatory reasonable cause finding against the respondent." It would seem that there would be no adverse legal implications in proceeding to enter a reasonable cause finding which is mandatory according to the statute.
The Commission has interpreted Neb. Rev. Stat. §48-1118(3) as requiring a response within thirty days of service, unless a showing of good cause for an extension is made by the respondent before expiration of the thirty day period. "Administrative agencies are generally clothed with the power to construe the law as a necessary precedent to administrative action." 2 Am. Jur. 2d Administrative Law § 78 (1994). The Nebraska Supreme Court has recognized that administrative agencies are to be given deference in interpreting the laws and regulations they are charged with enforcing. In OmahaNational Bank v. Jensen, 157 Neb. 22, 42 (1953), the Court reiterated its opinion:
 That construction of a statute of doubtful meaning given it by those whose duty it is to enforce it, and which construction the legislature has by its continued noninterference for a number of years acquiesced in, will be approved, unless as thus construed it contravenes some provision of the Constitution, or is clearly wrong. . . . When the court of last resort has judicially construed a statute, the rule permitting recourse to contemporaneous construction of the statute by administrative or executive officials, charged with the enforcement of such statute, is inapplicable.
Id. at 43. Thus, the Nebraska Equal Opportunity Commission is permitted to interpret the statute and its interpretation will stand unless, and until, a contrary judicial construction of the statute is rendered or the Legislature acts to provide a definition.
It is clear, as evidenced by the language of Neb. Rev. Stat. § 48-1118 and its legislative history, that the state has a strong interest in the efficient resolution of charges of alleged violations of the Nebraska Fair Employment Practices Act. Furthermore, the nature of the mandatory finding of reasonable cause against a respondent that has failed to respond within the thirty day period does not act to deprive the respondent of any substantial right. A finding of reasonable cause in this manner does not result in the imposition of monetary penalties or any judgment. The finding is simply a procedural mechanism that keeps the process moving. The respondent has an opportunity to resolve the matter on the merits if the complainant proceeds to state or federal court.
QUESTION: What should the NEOC use as the effective date of implementation of the correct application of the statute?
ANSWER: Immediately. Neb. Rev. Stat. § 48-1117(7) gives the commission discretion "to adopt and promulgate rules and regulations necessary to carry out the duties proscribed in the act." In this case, it may not be necessary for the commission to adopt rules and regulations for the agency to follow in order to be in compliance with § 48-1118(3). In the absence of rules and regulations, the agency is bound by the language of the statute. The legislative history of LB 124, 1993 Legislative Session, the amendment now embodied in §48-1118(3), clearly indicates that the purpose of that section was to expedite the process by which alleged violations of the Nebraska Fair Employment Practices Act are resolved. The sponsor of the amendment, Senator Hohenstein, noted in floor debate that the amendment was:
 designed to speed up the procedure. Settlement efforts should occur within the first thirty days of a probable cause finding so we don't have these things going on for weeks or months at a time, again to speed up the procedure. A respondent will be required to file a written response to the charge.
Floor Debate LB 124, June 3, 1993, p. 7378.
Because the requirements within § 48-1118(3) were specifically added when the Fair Employment Practice Act was amended (Laws 1993, LB 124), and the floor debate shows that the legislature had clear intent to efficiently facilitate these processes, the 30-day response requirement appears to be an important part in expediting the grievance process. Given its importance, the requirement for a written response within 30 days of service, absent a good cause showing, should apply to all cases. If there are cases in default because of this requirement, the commission could adopt a procedure and send written notice to all such defaulting parties, giving them 15 days to respond, after which a reasonable cause finding shall be entered against them.
QUESTION: How should the NEOC respond to complaints from respondents who assumed they had extensions of time within which to file responses based on past NEOC practices?
ANSWER: On a case-by-case basis. The respondents are bound by the statute just as the commission is, and it is not a defense to justify their default by reliance on the commission's past non-compliance. A respondent would have no recourse in district court, since a finding of reasonable cause, without a public hearing having been conducted, is not a final decision in a contested case appealable to a district court. Rathbun v.Nebraska Dept. of Roads, Lancaster County District Court, Docket 503 Page 068 (1994), Asher v. Nebraska Testing Corp., Douglas County District Court, Docket 930 Page 373 (1995). However, the commission does have the power to reconsider its determination of reasonable cause. Neb. Op. Atty. Gen. No. 181 (December 6, 1979). The commission could grant reconsideration to respondents who had the default judgment entered against them when they assumed they had an extension to answer. The executive director would decide on a case-by-case basis whether respondents relied on the commission's past conduct and assumed they had an extension of time to respond.
Very truly yours,
 DON STENBERG Attorney General
 Alfonza Whitaker Assistant Attorney General
APPROVED BY:
Don Stenberg
Attorney General