Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
02/19/2016 09:22 AM CST

In re Interest of Tavian B., a child
under 18 years of age.
State of Nebraska, appellee, v. Joseph B.,
appellant, and Oglala Sioux Tribe,
intervenor-appellee.

___ N.W.2d ___

Filed February 19, 2016.    No. S-15-129.

1. **Indian Child Welfare Act: Jurisdiction: Appeal and Error.** A denial of a transfer to tribal court under the Indian Child Welfare Act is reviewed for an abuse of discretion.
2. **Constitutional Law: Due Process: Appeal and Error.** Procedural due process is a question of law, which is reviewed independently of the lower court's ruling.
3. **Judges: Words and Phrases: Appeal and Error.** A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, which results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition.
4. **Indian Child Welfare Act: Jurisdiction: Good Cause: Proof.** At a hearing on a motion to transfer a proceeding to tribal court, the party opposing the transfer has the burden of establishing that good cause not to transfer exists.
5. **Indian Child Welfare Act: Intent.** The Indian Child Welfare Act is intended to promote the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families and the placement of such children in adoptive homes or institutions which will reflect the unique values of Indian culture.

Appeal from the Separate Juvenile Court of Lancaster County: Reggie L. Ryder, Judge. Reversed and remanded with directions.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Joe Kelly, Lancaster County Attorney, and Lory Pasold for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, Cassel, and Stacy, JJ.

Wright, J.

## NATURE OF CASE

Tavian B. was found to be a child who lacks proper parental care by reason of the fault or habits of his parents and to be in a situation dangerous to life or limb or injurious to his health or morals. See Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). Approximately 16 months later, the State of Nebraska moved to terminate the parental rights of both parents. The father then filed a motion to transfer jurisdiction to the Oglala Sioux Tribal Juvenile Court (tribal court) pursuant to the federal Indian Child Welfare Act of 1978 (ICWA). See 25 U.S.C. § 1901 et seq. (2012).

Prior to the juvenile court's ruling on the father's motion to transfer, the State withdrew its motion to terminate parental rights. The court found that good cause existed to deny the request to transfer jurisdiction to the tribal court, because the proceedings were in "an advanced stage." The father appeals the juvenile court's order overruling his motion to transfer.

For the reasons stated below, we reverse the judgment of the juvenile court and remand the cause with directions.

## SCOPE OF REVIEW

[1] A denial of a transfer to tribal court under ICWA is reviewed for an abuse of discretion. *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012).

[2] Procedural due process is a question of law, which is reviewed independently of the lower court's ruling. See *In re Interest of Landon H.*, 287 Neb. 105, 841 N.W.2d 369 (2013).

## FACTS

On May 16, 2013, the State filed a petition in the separate juvenile court of Lancaster County. It alleged that Tavian was a child who lacked proper parental care by reason of the faults or habits of his parents, Joseph B. (Appellant) and Tera B., and that he was in a situation dangerous to life or limb or injurious to his health or morals. See § 43-247(3)(a). On July 3, the juvenile court placed Tavian in the custody of the Department of Health and Human Services. Pursuant to ICWA, an "Affidavit and Notice" of the proceedings was delivered by registered mail to the Oglala Sioux Tribe (Tribe) and received on August 19.

On October 29, 2014, the State moved to terminate the parental rights of Appellant and Tera. Until that time, the goal of the proceedings in the juvenile court and the placement with the Department of Health and Human Services was reunification with the parents. Both parents denied the allegations in the motion on November 14. The Tribe received notice of the motion for termination of parental rights on November 21.

At a December 12, 2014, review hearing, Appellant testified that he had "just been accepted" and enrolled as a member of the Tribe, but had not received documentation from the Tribe verifying his enrollment. Immediately after the hearing, the Tribe moved to intervene, alleging that Tavian was an Indian child as defined by ICWA. Appellant orally moved to transfer the case to tribal court. The Tribe had not moved to transfer jurisdiction, but the tribal court had filed an order accepting jurisdiction. The juvenile court overruled Appellant's motion to transfer the case, because neither Appellant nor the Tribe had provided documentation verifying tribal enrollment or other evidence showing that ICWA applied to the case.

On December 16, 2014, Appellant filed a subsequent motion to transfer jurisdiction to the tribal court. At a hearing on January 6, 2015, certificates of tribal enrollment for Appellant and Tavian were received by the juvenile court. After the court

found that the provisions of ICWA applied to the case, the State requested and was given leave to withdraw its motion to terminate parental rights. The matter was continued for further hearing until 2 days later.

On January 7, 2015, the State filed an objection to the transfer, stating:

> COMES NOW, [a] Deputy County Attorney for Lancaster County, Nebraska, and objects to the transfer of the proceedings in this case to the [tribal court] because good cause exists to deny such transfer pursuant to Neb. Rev. Stat. [§] 43-1504(2).
>
> The State further requests the Court [set] this matter for hearing to determine whether good cause exists.

Relying on *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012), the juvenile court concluded that good cause existed to overrule the motion because the proceedings were at an advanced stage. Appellant appeals the overruling of his motion to transfer jurisdiction to the tribal court.

## ASSIGNMENTS OF ERROR

Appellant assigns, summarized and consolidated, that the juvenile court erred in finding good cause to deny his motion to transfer based on the advanced stage of the proceeding. Appellant also claims that his due process rights were violated by the court's making findings based on matters outside the scope of the record and not providing Appellant an opportunity to dispute and rebut such evidence.

## ANALYSIS

[3] The issue is whether the juvenile court abused its discretion in denying Appellant's motion to transfer the proceeding to tribal court. A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, which results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for

disposition. See *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992).

We apply ICWA to the case at bar. Neb. Rev. Stat. § 43-1504(2) (Reissue 2008) governs motions to transfer jurisdiction to tribal courts under ICWA. At the time this case commenced, § 43-1504 provided:

> (2) In any state court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, *in the absence of good cause to the contrary*, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe, except that such transfer shall be subject to declination by the tribal court of such tribe.

(Emphasis supplied.)

[4] At a hearing on a motion to transfer a proceeding to tribal court, the party opposing the transfer has the burden of establishing that good cause not to transfer exists. *In re Interest of Zylena R. & Adrionna R., supra*. In *In re Interest of Zylena R. & Adrionna R.*, we held that a proceeding for termination of parental rights should be regarded as a separate and distinct proceeding from foster care placement. In the case at bar, the Tribe accepted jurisdiction and neither parent objected to the transfer. Thus, absent the State's showing of good cause, the juvenile court was required to transfer the proceeding to tribal court.

The juvenile court found that the State had met its burden of showing good cause because the proceeding was at an advanced stage. It reasoned that usually, the date for determining whether the case was at an advanced stage would be the date of the filing of a motion to terminate parental rights. Because the State withdrew its motion for termination of parental rights on January 6, 2015, the court concluded that May 16, 2013, was the date of the State's petition for adjudication.

Using May 16, 2013, as the starting date, it concluded that the proceeding was at an advanced stage.

The juvenile court expressed concern that an Indian parent could play "an ICWA trump card at the eleventh hour" to transfer the case to tribal court. But we point out that the State's dismissal of its motion to terminate parental rights to avoid a transfer leaves an Indian child suspended in uncertainty. If the State sought a termination of parental rights, the party seeking transfer could file a new motion to transfer and the State could again dismiss the termination proceeding. The juvenile court's conclusion that the matter was in an advanced stage stemmed from the State's voluntary dismissal of the termination proceeding.

Good cause to overrule Appellant's motion to transfer to tribal court is not defined in ICWA. But the guidelines published by the Bureau of Indian Affairs (BIA guidelines) provide a basis for determining what constitutes good cause to deny motions to transfer. Previously, this court and other courts have looked to the BIA guidelines in making such determinations. See, *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012); *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992), *overruled on other grounds*, *In re Interest of Zylena R. & Adrionna R., supra*. See, also, *People ex rel. T.I.*, 707 N.W.2d 826 (S.D. 2005); *In re Adoption of S.W.*, 41 P.3d 1003 (Okla. Civ. App. 2001); *In re A.P.*, 25 Kan. App. 2d 268, 961 P.2d 706 (1998). The BIA guidelines provide guidance to state courts and child welfare agencies implementing ICWA and promote compliance with ICWA's stated goals by providing a framework and best practices for compliance.

At the time of the juvenile court ruling, the BIA guidelines provided that good cause not to transfer may exist if the proceeding was "at an advanced stage" when the petition to transfer was received and the petitioner failed to "file the petition promptly" after receiving notice. See Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg.

67,584, 67,591, C.3(b)(i) (Nov. 26, 1979) (not codified). While this appeal was pending, the BIA guidelines were amended. They now provide that in determining whether good cause exists to deny a motion to transfer to tribal court, the state court may not consider whether the case is at an advanced stage. See Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,149 and 10,156 (Feb. 25, 2015) (not codified). This amendment compels us to reconsider our prior adherence to the advanced stage of the proceedings as a basis for good cause, and on which the juvenile court relied in denying the transfer.

The BIA guidelines state that there may be valid reasons for waiting to transfer a proceeding until it reaches an advanced stage. A tribe might decline to intervene during foster care placement proceedings when the goal is reunification with the parents, whereas the tribe would likely be much more concerned with removal of Indian children in termination proceedings. The BIA guidelines note that denial of motions to transfer because a proceeding is at an advanced stage undermines the presumption of tribal jurisdiction over proceedings involving Indian children not residing or domiciled on the reservation. We note that ICWA seeks to protect not only the rights of the Indian child as an Indian, but also the rights of Indian communities and tribes in retaining Indian children.

In our consideration of whether good cause existed to overrule the motion to transfer, we find the amended BIA guidelines persuasive and instructive. The BIA guidelines were amended during this appeal, and we find them applicable to the case at bar. We hold that a determination that the proceeding is at an advanced stage is no longer a valid basis for finding good cause to deny a motion to transfer jurisdiction to a tribal court. We conclude that the overruling of the motion to transfer denied Appellant a just result.

Also before this court is the State's argument that the best interests of the child should be a basis for determining good

cause to deny a transfer to tribal court. It urges us to reconsider our holding *In re Interest of Zylena R. & Adrionna R., supra*, that the best interests of an Indian child may not be considered when determining whether good cause exists to deny transfer to a tribal court. It argues that courts in at least nine states have addressed the issue in favor of best interests, finding it a relevant consideration in assessing good cause. These courts have found that where ICWA left the meaning of "good cause" unexplained, its purpose and legislative history suggest the relevance of the child's best interests. *Id.*

The State directs our attention to a recent decision by the U.S. Supreme Court in *Adoptive Couple v. Baby Girl*, ___ U.S. ___, 133 S. Ct. 2552, 186 L. Ed. 2d 729 (2013). The Court stated:

> [ICWA] was enacted to help preserve the cultural identity and heritage of Indian tribes, but under the [South Carolina] Supreme Court's reading, [ICWA] would put certain vulnerable children at a great disadvantage solely because an ancestor—even a remote one—was an Indian. As the State Supreme Court read [25 U.S.C.] §§ 1912(d) and (f), a biological Indian father could abandon his child *in utero* and refuse any support for the birth mother—perhaps contributing to the mother's decision to put the child up for adoption—and then could play his ICWA trump card at the eleventh hour to override the mother's decision *and the child's best interests*.

*Adoptive Couple*, 133 S. Ct. at 2565 (emphasis supplied).

We decline the State's invitation to change our holding in *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012), for several reasons. First, we note that the amended BIA guidelines expressly provide that it is inappropriate for state courts to conduct an independent analysis of the best interests of the Indian child in determining placement preferences. While this preclusion of a best interests analysis did not specifically refer to transfers of cases to tribal courts, the BIA guidelines further state that whenever a parent or tribe

seeks to transfer the case to tribal court, it is presumptively in the best interests of the Indian child to transfer the case to the jurisdiction of the Indian tribe.

Second, we find that the context of the U.S. Supreme Court's statement in *Adoptive Couple v. Baby Girl, supra*, did not indicate that the Court intended to impose the best interests standard on motions to transfer.

[5] Third, allowing the state court to determine the best interests of the Indian child undermines the purpose of ICWA. ICWA is intended to promote the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families and the placement of such children in adoptive homes or institutions which will reflect the unique values of Indian culture. In *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. at 852, 825 N.W.2d at 186 (quoting *Mississippi Choctaw Indian Band v. Holyfield*, 490 U.S. 30, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989)), we stated:

> Permitting a state court to deny a motion to transfer based upon its perception of the best interests of the child negates the concept of "presumptively tribal jurisdiction" over Indian children who do not reside on a reservation and undermines the federal policy established by ICWA of ensuring that "Indian child welfare determinations are not based on 'a white, middle-class standard which, in many cases, forecloses placement with [an] Indian family.'"

Finally, preclusion of a separate best interests analysis by state courts does not suggest that the best interests of the child are ignored altogether. To the contrary, the best interests of the Indian child are considered regardless of which court decides the matter. We discussed this point in *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. at 852, 825 N.W.2d at 186, stating:

> The reality is that both a juvenile court applying Nebraska law and a tribal court proceeding under ICWA must act in

the best interests of an Indian child over whom they have jurisdiction. The question before a state court considering a motion to transfer to tribal court is simply which tribunal should make that decision. . . . Stated another way, recognizing best interests as "good cause" for denying transfer permits state courts to decide that it is not in the best interests of Indian children to have a tribal court determine what is in their best interests. By enacting ICWA, Congress clearly stated otherwise.

For the above reasons, we decline to reconsider our holding in *In re Interest of Zylena R. & Adrionna R., supra*, that the best interests of the Indian child is not a basis for good cause to deny a transfer of the case to tribal court. Because we have determined that the State did not show good cause to deny Appellant's motion to transfer, we need not review Appellant's claim that the juvenile court and the State violated his due process rights in denying his motion.

Because the State did not meet its burden of establishing good cause to deny transfer to tribal court, the juvenile court abused its discretion in denying Appellant's motion to transfer.

CONCLUSION

For the reasons stated above, we reverse the judgment of the juvenile court that overruled Appellant's motion to transfer the proceeding to tribal court and we remand the cause with directions to transfer the matter to tribal court.

Reversed and remanded with directions.

Stacy, J., concurring in part, and in part dissenting.

We held in *In re Interest of Zylena R. & Adrionna R.*[1] that the advanced stage of an Indian child custody proceeding could be good cause to deny a motion to transfer

---

[1] *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012).

to tribal court. Our holding was based in part on nonbinding guidelines published in 1979 by the Bureau of Indian Affairs (BIA).[2] Based on this precedent, the State argued below that the proceeding was at an advanced stage, and the juvenile court found this was good cause to deny the motion to transfer.

Today, in reliance on significant changes made in 2015 to the 1979 version of the guidelines (1979 BIA guidelines),[3] we now conclude courts may no longer rely upon a determination that a case is at an advanced stage as good cause to deny a motion to transfer to tribal court. While I concur that the mere advanced stage of the proceeding cannot constitute good cause to deny a transfer to tribal court, I write separately to clarify why we rely on the amended guidelines (2015 BIA guidelines) and to set out what I think is the proper standard of review under the circumstances. And because I respectfully disagree with the majority on the appropriate disposition of this case, I write separately to explain why I think the proper disposition would be to vacate the order and remand the cause for further proceedings applying the new law we announce today.

ROLE OF BIA'S GUIDELINES

The majority finds the 2015 BIA guidelines are "persuasive and instructive" on what constitutes good cause, and, on the facts of this case, I agree. But because the BIA's guidelines are nonbinding[4] and do not have the force of federal regulations, it is appropriate to explain why we find the guidelines instructive, and clarify why we are, in this case, relying on the 2105 BIA guidelines to change established law.

---

[2] Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 to 67,595 (Nov. 26, 1979) (not codified).

[3] Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146 to 10,159 (Feb. 25, 2015) (not codified).

[4] See, e.g., *In re Interest of Zylena R. & Adrionna R., supra* note 1.

As the majority recognizes, the BIA's guidelines are designed to promote compliance with the stated goals of the federal Indian Child Welfare Act of 1978 (ICWA)[5] and are intended to provide a framework of best practices for state agencies and courts.[6] But the advisory guidelines are simply the Department of the Interior's interpretation of certain provisions of ICWA.[7] In other words, the guidelines are interpretive rather than legislative, and we are under no obligation to follow the guidelines if we conclude they are not in accord with the language or intent of ICWA on a particular point.[8]

The guidelines were first published in 1979 and were not amended until 2015. The 2015 BIA guidelines, which became effective February 25, 2015, attempt to respond to national developments in ICWA jurisprudence.[9] While the 2015 BIA guidelines are instructive, it is important to emphasize that this court does not change its jurisprudence simply because an executive agency has made amendments to nonbinding guidelines. Rather, this court should determine whether to follow the 2015 BIA guidelines on a particular issue only after carefully considering them and judicially determining they are in accord with both ICWA and the Nebraska Indian Child Welfare Act (NICWA)[10] on that issue.

On the issue of the advanced stage of the proceedings, I note there is no language in ICWA or NICWA which expressly or impliedly limits the timeframe for making a motion to transfer to a tribal court. And it is significant that with the enactment of 2015 Neb. Laws, L.B. 566, the Legislature

[5] See 25 U.S.C. § 1901 et seq. (2012).

[6] See 2015 BIA guidelines, *supra* note 3, 80 Fed. Reg. 10,146-147, summary.

[7] See 1979 BIA guidelines, *supra* note 2, 44 Fed. Reg. 67,584, introduction.

[8] *Id*. (noting states "are free to act contrary to what the Department [of the Interior] has said if they are convinced that the Department's guidelines are not required by the statute itself").

[9] See 2015 BIA guidelines, *supra* note 3, 80 Fed. Reg. 10,146, summary.

[10] Neb. Rev. Stat. §§ 43-1501 to 43-1516 (Reissue 2008 & Supp. 2015).

amended NICWA in several respects, one of which was to expressly recognize that Indian tribes have a "continuing and compelling" governmental interest in an Indian child.[11] Particularly given the Legislature's strong language, I think it is apparent that denying a transfer merely because the proceedings are at an advanced stage when the motion is made would frustrate the purpose underlying ICWA and NICWA, and would undermine the presumption of tribal jurisdiction inherent in ICWA.[12] But I leave for another day the question of whether the advanced stage of proceedings, if coupled with other compelling circumstances properly considered under ICWA and NICWA, can constitute good cause for denying a transfer.

Because the 2015 BIA guidelines' interpretation is more consistent with the language and intent of ICWA and NICWA on the advanced stage issue than was our precedent to the contrary, I agree that the mere advanced stage of the proceeding cannot provide good cause to deny a motion to transfer to tribal court. And because the advanced stage of the proceeding was the sole basis for the juvenile court's denial of the transfer to tribal court, I agree the juvenile court's decision cannot be upheld.

## STANDARD OF REVIEW AND APPROPRIATE DISPOSITION

At the time the motion to transfer was tried and decided, settled Nebraska law recognized the advanced stage of the proceeding as a ground for a finding of good cause to deny transfer.[13] Nevertheless, the majority finds the juvenile court abused its discretion by finding the proceedings were at an advanced stage and there was good cause to deny the transfer. In essence, the majority finds the juvenile court abused its

---

[11] See § 43-1502 (Supp. 2015).

[12] See 2015 BIA guidelines, *supra* note 3, 80 Fed. Reg. 10,149.

[13] See *In re Interest of Zylena R. & Adrionna R., supra* note 1.

discretion by failing to anticipate we would make a change in the substantive law. I think this analysis is imprecise and unfair to the trial court.

I have great difficulty with the conclusion that the juvenile court abused its discretion by applying settled law to the matter before it. Because we have resolved this appeal based on principles of statutory interpretation, rather than by an analysis of the court's factual findings, I respectfully suggest the more appropriate standard of review would be that which we apply when reviewing questions of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[14] We have applied this standard of review quite recently in a case where we were called upon to consider the meaning of the phrase "'for good cause shown,'" a phrase which appeared in a statute but was undefined by the Legislature.[15] There, we determined under the circumstances that our first task was to independently determine the meaning of "good cause shown" and, after we defined the term in light of the entire statutory scheme, we then reviewed the trial court's factual findings for clear error.[16]

Here, were we to use the standard of review we typically apply when reviewing questions of law, I think the disposition of this case would be quite different. Rather than reversing the juvenile court's order for an abuse of discretion and remanding the cause with directions to grant the transfer, we instead would vacate the juvenile court's order denying the transfer and remand the cause for further proceedings under the new rule announced today.

Vacating and remanding for further proceedings would give the parties, and the trial court, the opportunity to apply the law

---

[14] *Pettit v. Nebraska Dept. of Corr. Servs.*, 291 Neb. 513, 867 N.W.2d 553 (2015).

[15] *Id*. at 518, 867 N.W.2d at 557.

[16] *Pettit, supra* note 14.

we have announced today to the specific facts of this case. I think simply remanding the cause with directions to grant the motion to transfer after announcing a significant substantive change in the law unfairly limits the proceedings on an issue of critical importance to the parties.

## ISSUES ON REMAND: QUANTUM OF PROOF, GOOD CAUSE, AND BEST INTERESTS

Because I think the proper disposition would be to vacate, and remand for further proceedings, I take this opportunity to address several aspects of our ICWA/NICWA jurisprudence likely to arise on remand.[17]

### Quantum of Proof

We have been clear that the party opposing a motion to transfer has the burden of proving good cause not to transfer,[18] but we have never specified the quantum of proof which must be met. Adopting a quantum of proof would provide a clear and consistent standard against which to determine when good cause has been proved. I would join the consensus of jurisdictions that have required good cause under ICWA to be proved by clear and convincing evidence.[19] I note this heightened quantum of proof is expressly relied upon elsewhere in NICWA when referencing good cause[20] and is consistent with

---

[17] See, *In re Interest of Laurance S.*, 274 Neb. 620, 742 N.W.2d 484 (2007); *Papillion Rural Fire Prot. Dist. v. City of Bellevue*, 274 Neb. 214, 739 N.W.2d 162 (2007).

[18] *In re Interest of Zylena R. & Adrionna R., supra* note 1.

[19] See, e.g., *Thompson v. Dept. of Family Services*, 62 Va. App. 350, 747 S.E.2d 838 (2013); *People in Interest of J.L.P.*, 870 P.2d 1252 (Colo. App. 1994); *Matter of Adoption of T.R.M.*, 525 N.E.2d 298 (Ind. 1988); *In re A.P.*, 25 Kan. App. 2d 268, 961 P.2d 706 (1998); *Matter of M.E.M.*, 195 Mont. 329, 635 P.2d 1313 (1981).

[20] See § 43-1508(4) (Supp. 2015).

the statutory preference for tribal jurisdiction under ICWA and NICWA.[21]

## Good Cause

By choosing not to statutorily define "good cause" in the context of transfers under ICWA and NICWA, Congress and the Nebraska Legislature have left to state courts the primary responsibility for interpreting the term. This is not a simple task.

In the past, we have been called upon to interpret the undefined phrase "good cause" in statutory contexts outside ICWA, and we have recognized the complicated nature of such an exercise.[22] We have defined good cause, in the context of a statute dealing with probate, as "a logical reason or legal ground, based on fact or law" and emphasized that the meaning of good cause is to be determined "in light of all of the surrounding circumstances."[23] In the context of a criminal case considering an extension of time to prepare a bill of exceptions for good cause shown, we defined good cause as the intervention of something beyond the control of the litigant.[24] We also have cited to Webster's Third New International Dictionary to define good cause as "'a cause or reason sufficient in law; one that is based on equity or justice or that would motivate a reasonable man under all the circumstances.'"[25] Most recently,

---

[21] See 25 U.S.C. § 1911(b) ("the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe"). Accord § 43-1504 (Supp. 2015).

[22] *Pettit, supra* note 14, 291 Neb. at 519, 867 N.W.2d at 558 (recognizing it is more complicated than it may seem to define good cause, because it "surely depends upon the factual circumstances").

[23] *In re Estate of Christensen*, 221 Neb. 872, 874-75, 381 N.W.2d 163, 165 (1986).

[24] *Bryant v. State*, 153 Neb. 490, 45 N.W.2d 169 (1950).

[25] *In re Estate of Christensen, supra* note 23, 221 Neb. at 874, 381 N.W.2d at 165 (emphasis omitted); *DeVries v. Rix*, 203 Neb. 392, 279 N.W.2d 89 (1979).

we examined the entirety of the relevant statute in determining the meaning of the phrase "good cause."[26]

Based on the foregoing, I would hold that good cause to deny a transfer under ICWA and NICWA means a compelling reason, based in law or fact, which is not contrary to the provisions or purposes of ICWA and NICWA and is sufficient to overcome the strong presumption of tribal jurisdiction. And I think having a general definition of good cause in the context of transfers would assist litigants and courts in analyzing factual situations not otherwise addressed in BIA's guidelines.

Historically, when interpreting good cause under ICWA, we have relied primarily on BIA's guidelines, rather than applying more traditional rules of statutory construction. But continued reliance on BIA's guidelines is problematic, because the 2015 BIA guidelines do not undertake to define good cause, and instead focus exclusively on identifying that which is *not* good cause. This has not always been the case.

Under the 1979 BIA guidelines, good cause to deny a transfer was recognized under four specific scenarios: (1) the proceeding was at an advanced stage when the motion to transfer was filed; (2) the Indian child was over 12 years of age and objected to the transfer; (3) the evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses; or (4) the parents of a child over 5 years of age are not available, and the child has had little or no contact with the child's tribe or members of the child's tribe.[27] The 1979 BIA guidelines specifically noted that the third scenario, undue hardship, was included because 25 U.S.C. § 1911(b) of ICWA was "'intended to permit a State court to apply a modified doctrine of *forum non conveniens*, in appropriate cases, to [e]nsure that the rights

---

[26] *Pettit, supra* note 14.

[27] 1979 BIA guidelines, *supra* note 2, 44 Fed. Reg. 67,591, C.3(b)(i) through (iv).

of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected.'"[28]

For reasons which are not clear, the 2015 BIA guidelines omit all four of the good cause factors identified in the 1979 BIA guidelines, and instead list only those things the BIA has determined courts may *not* consider in determining whether good cause exists.[29] As for what may still constitute good cause under ICWA, the 2015 BIA guidelines merely recite that good cause may be found if "the State court otherwise determines that good cause exists."[30]

The 2015 BIA guidelines explain why some of the 1979 good cause factors were omitted (including the factor regarding advanced proceedings)[31] but are silent regarding why two of the 1979 factors (the factor addressing the preference of an Indian child over age 12, and the factor addressing undue hardship) were omitted from the 2015 BIA guidelines. Because there was no explanation given for omitting these factors, it is not possible to judicially determine whether the BIA's rationale for omitting these factors is in accord with ICWA and NICWA. But certainly, the lack of guidance from the Department of the Interior on this issue should not preclude state courts from considering whether these remain viable factors when determining good cause under ICWA and NICWA. And something must constitute good cause to deny a transfer to tribal court, because both ICWA and NICWA expressly authorize it:

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, *in the absence of good cause to the contrary*, shall transfer such proceeding to

---

[28] *Id*., 67,591, C.3, commentary.

[29] 2015 BIA guidelines, *supra* note 3, 80 Fed. Reg. 10,156, C.3(c).

[30] See *id*., 10,149.

[31] See *id*.

the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.[32]

Statutory language is to be given its plain and ordinary meaning, and an appellate court's duty in discerning the meaning of a statute is to determine and give effect to the purpose and intent of the Legislature.[33] Recognizing this, we must look beyond the notable silence of the 2015 BIA guidelines in order to determine and give effect to the good cause language in ICWA and NICWA.

In determining whether there is good cause to deny a transfer, I think it remains appropriate for courts to consider whether the evidence necessary to decide the case could be adequately presented in the tribal court without undue hardship to the parties or the witnesses. I note the 1979 BIA guidelines addressed this specifically:

> Consideration of whether or not the case can be properly tried in tribal court without hardship to the parties or witnesses was included [as a good cause factor] on the strength of the section-by-section analysis in the House Report on [ICWA], which stated with respect to the § 1911(b), "The subsection is intended to permit a State court to apply a modified doctrine of *forum non conveniens*, in appropriate cases, to [e]nsure that the rights of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected." Where a child is in fact living in a dangerous situation, he or she should not be forced to remain there simply because the witnesses cannot afford to travel long distances to court.[34]

---

[32] 25 U.S.C. § 1911(b). Accord § 43-1504(2).

[33] *Pettit, supra* note 14; *Village of Hallam v. L.G. Barcus & Sons*, 281 Neb. 516, 798 N.W.2d 109 (2011).

[34] 1979 BIA guidelines, *supra* note 2, 44 Fed. Reg. 67,591, C.3, commentary.

The 1979 BIA guidelines went on to observe that "[a]pplication of this criterion will tend to limit transfers to cases involving Indian children who do not live very far from the reservation."[35] It was suggested that problems with an inconvenient forum might be alleviated by "having the court come to the witnesses" or requiring the "tribal court meet in the city where the family lived."[36]

I find persuasive the rationale provided in the comments to the 1979 BIA guidelines that the undue burden factor is actually a modified forum non conveniens analysis, and I note that prior to the 2015 BIA guidelines, Nebraska recognized this as a valid factor in the good cause analysis.[37] I see no principled basis under the operative statutes or our jurisprudence to depart from that precedent. When determining whether the doctrine of forum non conveniens should be invoked, we have said the trial court should consider practical factors that make trial of the case easy, expeditious, and inexpensive, such as the relative ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the ability to secure attendance of witnesses through the compulsory process.[38] Particular factors to consider in ICWA and NICWA cases may include whether alternative methods of participation, such as by telephone or videoconferencing, are available.[39] I note the juvenile court in this case made specific reference in its order to the fact that the tribal court was more than 430 miles from Lincoln, Nebraska.

---

[35] *Id.*

[36] *Id.*

[37] See *In re Interest of Leslie S. et al.*, 17 Neb. App. 828, 770 N.W.2d 678 (2009).

[38] See *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992), *overruled on other grounds, In re Interest of Zylena R. & Adrionna R., supra* note 1.

[39] See 2015 BIA guidelines, *supra* note 3, 80 Fed. Reg. 10,156, C.1(d). See, also, *In re Spears*, 309 Mich. App. 658, 872 N.W.2d 852 (2015).

By specifically mentioning forum non conveniens, I do not mean to suggest it is the only "good cause" factor which remains viable in the wake of the 2015 BIA guidelines. I note that when the Legislature amended NICWA in 2015, it added both a definition and a standard of proof for "good cause" in the context of placement preferences for Indian children:

Good cause to deviate from the placement preferences in subsections (1) through (3) of this section includes: (a) The request of the biological parents or the Indian child when the Indian child is at least twelve years of age; (b) the extraordinary physical or emotional needs of the Indian child as established by testimony of a qualified expert witness; or (c) the unavailability of suitable families for placement after a diligent search has been completed for families meeting the preference criteria. The burden of establishing the existence of good cause to deviate from the placement preferences and order shall be by clear and convincing evidence on the party urging that the preferences not be followed.[40]

This new definition of good cause appears instructive on the related task of determining good cause to deny a transfer request and illustrates several possible factors supporting a good cause finding which the Legislature has concluded are not contrary to the provisions or purpose of ICWA and NICWA.

Finally, because "best interests" is addressed in the majority opinion, I write separately to suggest that recent legislative amendments to NICWA undermine our holding in *In re Interest of Zylena R. & Adrionna R.*,[41] that state courts may not consider the best interests of an Indian child in deciding whether there is good cause to deny a transfer to tribal court.

L.B. 566 made significant amendments to NICWA, including expanding the stated purpose of NICWA to recognize the

---

[40] § 43-1508(4).

[41] *In re Interest of Zylena R. & Adrionna R., supra* note 1.

state's commitment to "protecting the essential tribal relations and best interests of an Indian child by promoting practices consistent with [ICWA]"[42] and adding a new definition of "best interests of the Indian child":

> (2) Best interests of the Indian child shall include:
>
> (a) Using practices in compliance with [ICWA], [NICWA], and other applicable laws that are designed to prevent the Indian child's voluntary or involuntary out-of-home placement; and
>
> (b) Whenever an out-of-home placement is necessary, placing the child, to the greatest extent possible, in a foster home, adoptive placement, or other type of custodial placement that reflects the unique values of the Indian child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with the Indian child's tribe or tribes and tribal community.[43]

It is significant that the Nebraska Legislature undertook to define "best interests of the Indian child" under NICWA and that it did so in a manner which does not prohibit consideration of best interests altogether, but, rather, narrows the traditional concept of best interests to reconcile it with the important policy goals and procedural protections afforded by ICWA and NICWA.

As such, on the issue of whether some inquiry into an Indian child's best interests is permitted when determining whether there is good cause to deny a transfer, I read the recent amendments to NICWA as indicating that consideration of best interests need not be categorically excluded, but must be narrowly applied in a manner that is consistent with the provisions and promotes the goals of ICWA and NICWA. Because I think these recent legislative amendments to NICWA compel us to reconsider the breadth of our holding in *In re Interest of*

---

[42] § 43-1502.

[43] § 43-1503(2) (Supp. 2015).

*Zylena R. & Adrionna R.*, I cannot agree with the majority's broad statement that "the best interests of the Indian child is not a basis for good cause to deny a transfer of the case to tribal court."

In summary, I agree with the majority that the mere advanced stage of the proceeding should no longer be good cause to deny a motion to transfer to tribal court. But because we announce a significant change in the law today, I respectfully disagree with the majority's disposition of this case, and suggest the better disposition would be to vacate, and remand for further proceedings, and in doing so, I would provide further guidance on the applicable standard of review, the appropriate quantum of proof, and the proper parameters of good cause to deny a transfer under ICWA and NICWA. For these reasons, I both concur and dissent in the opinion of the court.

HEAVICAN, C.J., and CASSEL, J., join in this concurrence and dissent.