GUY W. SECORD, PLAINTIFF IN ERROR AND APPELLANT, V. M. LOUISA POWERS, DEFENDANT IN ERROR AND APPELLEE.

FILED APRIL 10, 1901.  NOS. 9,433, AND 10,033.

1. Judgment by Fraud or Perjury: VACATION.  Under section 602 of the Code of Civil Procedure, a judgment clearly shown to have been obtained by fraud or false testimony, which it would be against conscience to enforce, will, on the application of the unsuccessful party and a showing of due diligence, be vacated and set aside.

2. ——: ——.  The intentional production, by a litigant, of false testimony to establish a cause of action or defense will, in a proper case, justify the annulment of a decree or judgment which is the product of such testimony.

3. Trial: PROCEDURE: ASSUMPTION AS TO ADVERSARY.  A party should, in preparing his case for trial, proceed on the assumption that his adversary will produce evidence to make good the averments of his pleading.

4. Action to Vacate Judgment: PLEADING AND PROOF.  In an action to vacate a judgment on the ground that it was obtained by fraud the plaintiff must allege and prove that he exercised due diligence at the former trial, and that his failure to secure a just decision was not attributable to his own fault or negligence.

ERROR from the district court for Clay county.  Consolidated with Guy W. Secord, appellant, v. M. Louisa Powers, appellee, No. 10,033.  Tried below before HASTINGS, J.  *Affirmed.*

*Thomas H. Matters*, for plaintiff in error.

*Leslie G. Hurd* and *S. W. Christy, contra.*

SULLIVAN, J.

The fundamental question involved in this litigation is the ownership of certain cattle, hogs and other chattels, seized by Guy W. Secord, sheriff of Clay county, under an order of attachment issued out of the district court in an action brought by the Sutton National Bank against

Thomas Powers to recover a money judgment. M. Louisa Powers, wife of Thomas Powers, asserted title to the property, and at her instance, or at least for her benefit, a motion was made to discharge the attachment. In support of this motion, which seems to have been eventually overruled, Mrs. Powers filed, not later than June 1, 1896, an affidavit containing a detailed statement of her means and the sources from which they were derived, together with a circumstantial account of the transactions through which she acquired the possession and ownership of the attached property. She afterwards instituted in the district court an action of replevin against Secord, which was tried in April, 1897, and resulted in a verdict and judgment confirming her claim to the cattle and hogs. After the adjournment of the term at which the replevin action was tried, Secord filed a petition under section 602 of the Code of Civil Procedure, alleging that the verdict against him had been obtained by perjury and asking that the judgment in favor of Powers be set aside and a new trial awarded. Upon this petition there was a trial, which resulted in a decision denying the application to vacate the judgment. The record in each of the cases is now before us for review.

. The only question discussed by counsel, and, therefore, the only one which we shall consider, is whether the evidence is of such a character as to justify the conclusions reached by the district court. We are fully satisfied that the evidence in the replevin action was sufficient to take the case to the jury, and that the finding in favor of the plaintiff, ratified as it is by the trial judge, should be approved and permitted to stand. And we are equally well satisfied with the decision in the equity case.

Secord was not under the necessity of relying entirely, in the replevin suit, upon the candor and integrity of Mrs. Powers. Her affidavit in the attachment case advised him of all the transactions that she had with the principal witnesses produced at the second trial. It was

quite as easy for him to secure the attendance, or obtain the depositions, of these witnesses for the first trial as for the second. It seems, however, that he did not even take the trouble to consult them. He knew that the plaintiff would undertake to establish her claim of title, and he knew of the witnesses who might, perhaps, refute her claim; but he did not question them either in court or out of court. Evidently he made no adequate prepara-tion for trial; he did not become diligent until after he heard from the jury. The fourth subdivision of section 602 aforesaid creates no new right; it is merely declara-tory of the equity doctrine that a judgment clearly shown to have been obtained by fraud, and which it would be against conscience to enforce, will, on the application of the unsuccessful party and a showing of due diligence, be vacated and set aside. The weight of authority doubt-less is that a court of equity will not arrest the execution of a judgment founded upon false testimony which was considered and passed upon by the court or jury in the case in which the judgment assailed was rendered. In this state, however, the rule is that the intentional pro-duction of false testimony will, in a proper case, justify the annulment of a decree or judgment which is the product of such testimony. *Munro v. Callahan*, 55 Nebr., 75; *Barr v. Post*, 59 Nebr., 361.

But, as was said in *Barr v. Post, supra*, it is not the policy of the law to encourage actions of this kind. There must be an end to litigation. A party can not be permit-ted to experiment with his case at the expense of the pub-lic. He is not justified in assuming that his adversary will not produce evidence to make good the averments of his pleading. "Whenever an issue exists in any action or proceeding," says Mr. Freeman in his work on Judg-ments (vol. 2, 4th ed., sec. 489), "each of the parties should anticipate that his adversary will offer evidence to sup-port his side of it, and should be prepared to meet such evidence with counter-proofs. Where he has an oppor-tunity to do this, and does not avail himself of it, * * *

he can not, in effect, obtain a retrial of the issue before another tribunal by charging that the judgment against him was procured by perjury."

A statute of the state of Minnesota provides (Minnesota General Statutes, 1878, ch. 66, sec. 285) "that in all cases where judgment heretofore has been, or hereafter may be, obtained in any court of record by means of the perjury, subornation of perjury, or any fraudulent act, practice, or representation of the prevailing party, an action may be brought by the party aggrieved to set aside said judgment at any time within three years after the discovery by him of such perjury, subornation of perjury, or of the facts constituting such fraudulent act, practice or representation." Considering this provision, Gilfillan, C. J., in *Hass v. Billings*, 42 Minn., 63, after showing the necessity for a strict construction of the law, continues as follows: "When an issue is squarely made in a case, so that each party knows what the other will attempt to prove, and neither has a right, or is under any necessity, to depend on the other proving the fact to be as he himself claims it,—and such appears to be this case,—the mere allegation by the defeated party that there was, as to such issue, false or perjured testimony by the successful party or his witnesses will not, as we think, bring his case within the meaning of the statute. The statute certainly could not have been intended to excuse a party from exercising proper diligence in preparing for trial. It does not appear by this complaint but that these plaintiffs could, with the least diligence, have ascertained how the fact was, and have produced ample evidence in respect to the character of the note of Sackett & Wiggins and the responsibility of the makers. It cannot be that the statute intended, in giving the action, to make unnecessary the ordinary prudence and reasonable diligence required in cases of application for new trials on the ground of surprise or newly-discovered evidence." In a later case in the same court (*Colby v. Colby*, 59 Minn., 432) it was held that per-

jured testimony given by the plaintiff in support of the allegations of his complaint was not of itself sufficient to entitle the defendant to relief from a judgment procured by such testimony, if the facts testified to were not peculiarly or exclusively within the knowledge of the plaintiff.

From the evidence produced at the second trial it is established beyond doubt that if Secord failed to secure a just decision in the replevin action, the failure was chiefly due to his own carelessness or over-confidence. The trial court was right in refusing to vacate the judgment, not only because Secord did not make a sufficient showing of diligence, but also for the reason that the witness upon whose evidence he mainly relied, was utterly unworthy of credit or confidence. The testimony of this witness seems to have been given by way of compensation and atonement for an affidavit which he had furnished the previous year to the defendant in the attachment suit. He did not testify like a person having any sentimental attachment to truth, but rather like one who felt no moral restraint and was willing and anxious to render both litigants good service. His evidence is so contradictory and irreconcilable upon all material and immaterial points; it clashes with and impinges upon itself so often and in so many ways that no discriminating judge would for a moment think of making it the basis of any judicial action. We do not think the evidence given on both trials, when considered together, shows anything more than a balance of probability against the correctness of the conclusion reached in the replevin case.

Both judgments are

AFFIRMED.