IN RE ESTATE OF FLORENCE MILLER CORBETT.
WILLIAM DEVRIES, APPELLANT, V. ELMER RIX ET AL., APPELLEES, LEE GRIMES ET AL., INTERVENORS-APPELLANTS.

279 N. W. 2d 89

Filed May 15, 1979.   No. 42015.

Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellant and intervenors-appellants.

Brian Schmid of Schmid, Ford, Mooney, Frederick & Caporale, for appellee Rix.

Ray C. Simmons, for appellees Hammang and Belanos.

Heard before BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ., and KUNS, Retired District Judge.

HASTINGS, J.

This is an appeal from the order of the District Court sustaining a demurrer to the petition on appeal and dismissing contestant's appeal from the order of the county court of Dodge County which overruled contestant's motion filed under the provisions of section 30-2437, R. R. S. 1943.

The decedent, Florence Miller Corbett, an elderly widow and a resident of Dodge County, Nebraska, died on July 21, 1977, leaving as her only next of kin two sisters, five nephews, and one grand-nephew. Pursuant to the Nebraska Probate Code, a petition for the formal probate of a purported last will and testament dated March 31, 1975, and a purported codicil dated December 22, 1976, was filed in Dodge County court on July 26, 1977, by Alice Devries, the executrix and now denominated personal representative named in said instruments, and a sister of the decedent. The testamentary instruments left small amounts to the various next of kin but the bulk of the estate was left to a tenant farmer by the name of Elmer Rix and a housekeeper and companion of the decedent, Rita Belanos Canino, and to the housekeeper's sister, Maria Teresa Hammang.

On the same day the petition for probate was filed, an order was entered by the county judge directing

that a hearing be held on the petition on August 22, 1977, at 10 o'clock a.m., and that notice be given to all interested persons. Accordingly, such a notice was published as required by law stating that "a petition for formal probate of will of said deceased, determination of heirs, and appointment of Alice M. Devries as personal representative has been filed and is set for hearing in the Dodge County Court on August 22, 1977 at 10:00 o'clock a.m. * * *." According to an "Affidavit of Mailing Notice" filed by the attorney for the executrix, a copy of said notice was mailed to, among others, William Devries, contestant-appellant here, who is a nephew of the decedent and a son of the executrix. No objections to the probate as provided for by section 30-2428, R. R. S. 1943, were filed by anyone, including the contestant. On August 22, 1977, upon consideration of the petition for formal probate and without any evidence being offered as to the due execution of the will, the same was admitted to probate by order of the county court of Dodge County. The determination of the validity of the codicil was continued. On the same date the executrix filed her acceptance of appointment and bond in the amount of "0" dollars, and letters of personal representative were issued by the court. Notice of the foregoing was mailed to all interested parties, including the contestant, by U. S. mail on August 25, 1977. On September 20, 1977, a "Demand for Notice" of inventory, all filing of petitions, motions, and deeds of distribution was filed by the contestant, and on the same date, some 28 days following the order admitting the will to probate, contestant filed a "Motion to Vacate Order Admitting Will to Probate." The motion alleged, among other things, the foregoing facts and that contestant knew he was a devisee under a will of the decedent dated September 9, 1968; that after the order of August 22, 1977, admitting the 1975 will to probate, he learned for the first time that he had been disinherited; that

decedent lacked testamentary capacity when she executed the 1975 will; and that the same was the result of undue influence exercised upon her by Rita Belanos Canino and Maria Teresa Hammang. On the same date, an application for admission of the codicil to probate was filed by the executrix and, by order of the county court of September 22, 1977, was so admitted.

Contestant's motion to vacate the order admitting the will to probate was heard on October 20, 1977. In addition to the foregoing information, that hearing brought out the facts that the attorney for the estate read the will to several members of the family a day or two after the funeral; that contestant was not present at that reading, and that he first learned the will had been changed so that he no longer was a principal heir during the course of a long-distance telephone conversation with his mother, the executrix, a day or so after "the reading of the will;" that contestant first received a copy of the will in mid to late August or early September, he wasn't certain; that contestant heard sometime in mid-August that some of the other disinherited next of kin contemplated some action opposing probate of the will; that he was on the road through most of August; that the first opportunity he had to consult legal counsel was in September when he returned to his home in Washington, D. C., and the attorney advised him to talk to the attorney for the estate which he did. He then learned the will had already been admitted to probate. Contestant admitted he received a copy of the notice mailed to him as to the August 22 hearing to propose the will for probate.

The county court then denied the contestant the right to introduce evidence as to want of capacity or undue influence, refused an offer of proof in this regard, and found that proper notice of the initial hearing for probate of the will had been given, that the proceeding had been unopposed, and that the will

and later the codicil were duly admitted to probate upon the strength of the pleadings as provided for by section 30-2429, R. R. S. 1943. Finally, the court found that contestant *"failed to proceed with due diligence and timeliness to raise objection to will and codicil prior to admission."* (Emphasis supplied.)

A notice of appeal from the order denying the motion to vacate the order of August 22, 1977, admitting the will and the order of September 22, 1977, admitting the codicil, was filed in county court on October 28, 1977, and an appeal bond was filed on November 4, 1977. A petition on appeal was filed in District Court on November 14, 1977, repeating the allegations of the motion to vacate, but instead of mentioning a will of September 9, 1968, he asked that a will of October 17, 1969, together with a codicil of May 1, 1974, be admitted to probate. Lee Grimes and others, being nephews and a grandnephew of decedent, filed a petition to intervene, adopting the allegations of contestant's petition on appeal. Proponents Rix, Canino, and Hammang, appellees here, filed motions to strike, to dismiss the petition in intervention, and a demurrer to contestant's petition, all of which were sustained. Contestant elected to stand on his petition and the same was dismissed. Contestant and intervenors appeal.

The critical question in this case is the meaning of section 30-2437, R. R. S. 1943: *"Formal testacy proceedings; vacation of order for other cause. For good cause shown, an order in a formal testacy proceeding may be modified or vacated within the time allowed for appeal."* The proponents contend that "good cause" means the same thing that it did in the statute of nonclaim, formerly section 30-605, R. R. S. 1943, and still does in the modern version, section 30-2485, R. R. S. 1943, which states that a "creditor may apply to the court within sixty days after the expiration date provided in this subdivision for additional time and the court, *upon good cause shown,*

may allow further time not to exceed thirty days; * * *." (Emphasis supplied.) This court in applying the original section seemed to consistently require a showing of "diligence and of unavoidable mistake or accident, or of fraud * * *." Nebraska Wesleyan University v. Bowen, 73 Neb. 598, 103 N. W. 275 (1905). Thus the proponents urge the rule adopted by the lower courts that "good cause" requires one to show that although he acted with due diligence, through no fault of his own he was prevented from acting within time. Contestant, on the other hand, although stating in his brief that "good cause" simply requires him to show a substantial reason for not appearing at the original hearing, which the proponents are quick to point out was not even done, his assignment of error makes it obvious he is arguing that "good cause" goes to the merits of the case, i.e., that showing a sufficiently legal ground or reason for vacation of the order — lack of capacity and undue influence — is good cause if brought to the attention of the court within the time limit contemplated by section 30-2437, R. R. S. 1943.

Proponents cite a line of cases in which the court refused to set aside the probate of a will because the contestant failed to "show that the failure to obtain a just decision is not attributable to his own fault or negligence," Flint v. Panter, 187 Neb. 615, 193 N. W. 2d 279 (1971); and it is "not sufficient to allege generally that due diligence has been used, but the facts constituting due diligence must be set out," In re Estate of Reikofski, 144 Neb. 735, 14 N. W. 2d 379 (1944); and to the same effect, Gleason v. Poore, 167 Neb. 312, 92 N. W. 2d 705 (1958). However, these and other similar cases had their beginnings in Miller v. Estate of Miller, 69 Neb. 441, 95 N. W. 1010 (1903), which in turn borrowed from Secord v. Powers, 61 Neb. 615, 85 N. W. 846 (1901). The petitions to vacate filed in the latter two cases were under the provisions of section 602 of the Code of Civil Procedure,

now essentially section 25-2001, R. R. S. 1943, and the rule announced by the court in both instances must be viewed against the backdrop of that statute and the particular facts of the cases.

The statutes, former section 602 of the Code of Civil Procedure and section 25-2001, R. R. S. 1943, provide in part as follows: "A district court shall have power to vacate or modify its own judgments or orders after the term at which such judgments or orders were made * * * (4) for fraud practiced by the successful party in obtaining the judgment or order; * * *." Obviously, as stated in Miller v. Estate of Miller, *supra*, and Secord v. Powers, *supra*, this applies to county courts as well. There is no specific time limit within which to act, except that it applies to vacation after term. A trial court has always had inherent power over its judgments to correct errors and mistakes therein, even to the extent of granting a new trial whether requested or not, as long as such action is taken within the same term of court at which the judgment was entered. Harman v. Swanson, 169 Neb. 452, 100 N. W. 2d 33 (1959).

In Secord v. Powers, *supra*, plaintiff lost the case on the first trial and filed a petition under section 602 alleging that the verdict against him had been obtained by perjury and asking that the judgment be set aside and a new trial awarded. There was a trial which resulted in a decision denying the application to vacate the judgment. This court said: "The trial court was right in refusing to vacate the judgment, not only because Secord did not make a sufficient showing of diligence, *but also for the reason that the witness upon whose evidence he mainly relied, was utterly unworthy of credit or confidence. * * ** He did not testify like a person having any sentimental attachment to truth, but rather like one who felt no moral restraint and was willing and anxious to render both litigants good service. * * * We do not think the evidence given on both trials,

when considered together, shows anything more than a balance of probability against the correctness of the conclusions reached in the replevin case." (Emphasis supplied.)

Although it seems rather obvious that the court placed considerable emphasis on the untrustworthiness of the witness, nevertheless, it furnished the basis for promulgation of the rule of "due diligence" when seeking to vacate the probate of a will *after term*, as was done in Miller v. Estate of Miller, *supra*. In that case, a will was admitted to probate on June 2, 1900. Almost 7 months later, on December 26, 1900, appellants filed a petition to vacate the decree admitting the will to probate asserting that testator lacked testamentary capacity and was subject to undue influence. The petition was denied in both the county court and District Court. This court, in affirming, there said: "It is the settled rule, in this state at least, that under section 602 of the code a judgment clearly shown to have been obtained by fraud or false testimony, which it would be against conscience to enforce, will, on the application of the unsuccessful party *and a showing of due diligence*, be vacated and set aside. *Secord* v. *Powers*, 61 Neb. 615." (Emphasis supplied.) Within the concluding paragraph of the Miller opinion appears the primary reason for the rule when dealing with a vacation statute with no time limit as was, and is, the case in section 602 and section 25-2001, R. R. S. 1943: "But the peace and repose of society forbids that litigation should be prolonged indefinitely. The law, therefore, requires a litigant to present his defense seasonably. If, through his own negligence or want of diligence, he fails to do so, equity will not relieve him from the consequences of his own neglect or want of care. Were it otherwise, *no man could know with certainty that any controversy was finally settled and at rest*." (Emphasis supplied.)

The same reasoning does not apply to section 30-

2437, R. R. S. 1943, which very definitely limits the time within which a motion to vacate may be filed by the language "within the time allowed for appeal." That time is, of course, 30 days as provided for in section 30-1602, R. R. S. 1943: "All appeals shall be taken within thirty days after the decision complained of is made." This certainly does not leave any great period of uncertainty "that any controversy was finally settled and at rest."

The "period of uncertainty" is provided for in section 30-2436, R. R. S. 1943, which allows petitions for modification after appeal time because of unawareness of the existence of another will and no notice of the proceedings, or unawareness of death and no notice except by publication. Such petitions must be filed prior to the earlier of the following time limits: (1) Entry of an order of final distribution; (2) not more than 6 months after the filing of a closing statement, if the estate is closed by statement; (3) when it is no longer timely to initiate an original probate proceeding; or (4) not more than 12 months after entry of the order sought to be vacated. That section of the statute specifically sets out conditions of due diligence. Also, this is not to say that under certain circumstances an order could not be vacated at some indefinite time in the future under the provisions of section 25-2001, R. R. S. 1943, upon a showing of "due diligence." Section 30-2203, R. R. S. 1943, provides: "Unless displaced by the particular provisions of this code, the principles of law and equity supplement its provisions."

Proponents argue that repealed section 30-605, R. R. S. 1943, as to late claims, permitted the same only upon a strict showing of due diligence. This is generally true. They also argue that according to the Nebraska Comment to the new nonclaim statute, section 30-2485, R. R. S. 1943, the language "upon good cause shown, may allow further time not to exceed thirty days" was adapted from repealed sec-

tion 30-605. It follows, according to their argument, that the Nebraska Legislature was aware of the "due diligence" interpretation applied to "good cause" by this court as to section 30-605, and therefore, in borrowing that language for section 30-2485, intended the same "due diligence" meaning. That may very well be true. However, the minor premise of their syllogism as to section 30-2437 following 30-605 is not true and the conclusions accordingly not sound. Quoting from their briefs: "And — the term 'for good cause shown' in being carried from the old 30-605 to the new *30-2437* at issue here requires the same strict interpretation as was given to that term by decisions of this Court in interpreting the old 30-605." (Emphasis supplied.) Section 30-2437 was carried verbatim from section 3-413 of the Uniform Probate Code, not from section 30-605, and unfortunately, entered our body of law without the benefit of prior interpretations of this court, or of any other court. There is not so much as a comment following it. Likewise, section 30-2220, R. R. S. 1943, arrived substantially unchanged from the Uniform Probate Code, section 1-401, and that language "(b) The court *for good cause shown* may provide for a different method or time of giving notice for any hearing," (emphasis supplied), did not come from the "old 30-605." It would take a strained interpretation indeed to extract "due diligence" from "good cause shown" as used in section 30-2220, R. R. S. 1943.

In effect, the situation that existed here was no different than where default judgment is entered and a timely application (within the limitation contemplated by section 30-2437, R. R. S. 1943), to vacate is filed together with a tendered defense — lack of testamentary capacity and undue influence — which, if true, would require the vacation of the decree admitting the will to probate. As stated in Steinberg v. Stahlnecker, 200 Neb. 466, 263 N. W. 2d 861 (1978), the most recent of a long line of Nebraska cases on

the same point: "Our law is well settled. Where a judgment has been entered by default and a prompt application has been made at the same term to set it aside, with the tender of an answer or other proof disclosing a meritorious defense, the court should on reasonable grounds sustain the motion and permit the cause to be heard on the merits." To the same effect is Beliveau v. Goodrich, 185 Neb. 98, 173 N. W. 2d 877 (1970): "It is the policy of the law to give a litigant full opportunity to present his contention in court and for this purpose to give full relief against slight and technical omissions. On the other hand, it is the duty of the courts to prevent an abuse of process, unnecessary delays, and dilatory and frivolous proceedings in the administration of justice. Consequently this court has long held that a district court has inherent power to vacate or modify its own judgment any time during the term in which it is rendered. * * * Mere mistake or miscalculation of a party or his attorneys is not sufficient, in itself, to warrant the refusal to set aside a default judgment, *when there is a good defense pleaded or proved and no change of position or substantial misjustice [sic] will result from permitting a trial on the merits.*" (Emphasis supplied.) No hearing was ever had on the admission of this will to probate, no witnesses were ever called, and the same witnesses to the will and codicil, according to the county court hearing on contestant's motion, who were available on the date when the hearing to admit the will to probate was set, were still available at the time of the hearing on contestant's motion. Other than the fact that proponents might lose their inheritances under the will because of the possibility of lack of testamentary capacity, or of undue influence on the part of one or more of them, it could hardly be said that under those circumstances a "substantial injustice will result from permitting a trial on the merits."

The purposes and rules of construction to be ap-

plied to the Nebraska Probate Code are expressed in section 30-2202, R. R. S. 1943: "(a) *This code shall be liberally construed* and applied to promote its underlying purposes and policies. (b) The underlying purposes and policies of this code are: (1) to simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors and incapacitated persons; (2) *to discover and make effective the intent of a decedent in distribution of his property*; (3) to promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors; (4) to facilitate use and enforcement of certain trusts; (5) to make uniform the law among the various jurisdictions." (Emphasis supplied.)

To equate "good cause shown" with a "showing of due diligence" is hardly a liberal construction of the term "good cause shown." Proponents would have us deny contestant the opportunity to prove the allegations made in his motion to vacate, timely filed within the literal interpretation of the appropriate statute, which, if true, would compel a finding of no valid will. To do this, recognizing that the will was admitted to probate without hearing or formal proof of due execution, could hardly be said to encourage the policy "to discover and make effective the intent of a decedent in distribution of his property."

Webster's Third New International Dictionary defines "good cause" as "a cause or reason sufficient in law; one that is *based on equity or justice* or that would motivate a reasonable man under all the circumstances." (Emphasis supplied.)

The meaning of good cause must be determined in light of all of the surrounding circumstances. Therefore, without regard to its use in the nonclaim situation, which is inapplicable here, it is our opinion that good cause as used within the provisions of section 30-2437, R. R. S. 1943, means a logical reason or legal ground, based on fact or law, why an order should

be modified or vacated. Contestant advanced such reasons or grounds in his motion within the limited time specifically provided by statute, and which if proven true, would require the vacation of the particular order attacked. He should have had an opportunity to present his evidence.

Any suggestion that the appeal was not lodged within 30 days of the order admitting the will to probate is completely unsound. The filing of a motion to vacate, as was done here, is of a somewhat similar nature as that of filing a motion for a new trial in District Court. The ruling on the motion to vacate in effect supplants the decree of probate as the final order referred to in section 30-1601, R. R. S. 1943, which may be appealed within 30 days under section 30-1602, R. R. S. 1943. That was done in this case.

In reality, this is a situation of an appeal by an interested person from a proceeding at which he neither appeared nor contested. Any person affected by the probate of a will may appeal from a final order of the county court concerning the will whether or not he appeared and contested the probate in that court, and he is entitled to be heard in the District Court without diminution of rights as a party to the cause. Clutter v. Merrick, 162 Neb. 825, 77 N. W. 2d 572 (1956).

Proponents are correct as to the position of the intervenors — they must take the lawsuit as they find it and ordinarily cannot change the position of the original party. State ex rel. Nelson v. Butler, 145 Neb. 638, 17 N. W. 2d 683 (1945). However, the District Court should not have dismissed their petition in light of what we have said as to contestant's petition because in their prayer they simply joined in the prayer set out in contestant's petition to vacate the order admitting the will to probate.

Finally, proponents complain because contestant, in his motion to vacate, claimed that he was a devi-

see under a will of the decedent dated September 9, 1968, whereas in his petition on appeal he asked the District Court to probate a will of the decedent executed on October 17, 1969, together with a codicil executed on May 1, 1974. They also point to section 30-2434, R. R. S. 1943, which provides in part: "After a final order in a testacy proceeding has been entered, no petition for probate of any other instrument of the decedent may be entertained, except incident to a petition to vacate or modify a previous probate order and subject to the time limits of section 30-2436." This is an obvious reference to the limitations and conditions contained in section 30-2436, R. R. S. 1943, previously referred to in general terms in this opinion. However, these contentions may be disposed of by pointing out that this is simply a will contest, an appeal to set aside the previous admission to probate of a particular instrument. All references to other particular wills, in either the motion, petition on appeal, or the request that the District Court admit a certain will to probate — which it has no jurisdiction to do in the first instance — are purely superfluous to this appeal and may be disregarded.

The judgment of the District Court is reversed and the cause is remanded with directions to grant appellants a new trial in accordance with this opinion and as provided by law.

REVERSED AND REMANDED.