IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BRADSHAW V. FRAZIER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ANTONIO BRADSHAW, APPELLEE,

V.

STEPHANIE FRAZIER, APPELLANT.


Filed October 31, 2023.    No. A-23-004.


Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

Andrew M. Ferguson, of Smith, Pauley, Slusky & Rogers, L.L.P., for appellant.

Kory L. Quandt and Ryan M. Hoffman, of Bressman, Hoffman, Jacobs & Quandt, P.C., L.L.O., for appellee.


PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Stephanie Frazier appeals the Douglas County District Court's order awarding joint legal and physical custody of her minor child to her and Antonio Bradshaw, the father of the minor child. Frazier argues that the district court abused its discretion by reinstating the case and in its award of joint legal and physical custody. Frazier also claims the district court demonstrated a personal bias and prejudice against her. After our review, we affirm.

## BACKGROUND

The parties, who never married, are the biological parents of one child, a son born June 2018; however, Bradshaw was not named on the child's birth certificate. Frazier has one other minor child from a prior relationship. That child was 17 years old at the time of trial, and Frazier

- 1 -

has full legal and physical custody of her. Bradshaw has two other sons from a prior relationship, in which he has joint physical and legal custody. The boys were 14 and 11 years old at the time of trial, and Bradshaw has physical custody of the boys every other week.

From the time their son was born until August 2020, Bradshaw and Frazier lived together and operated as a family unit. From August 2020 to July 2021, Bradshaw and Frazier no longer lived together, but Bradshaw would spend a substantial amount of time at Frazier's house and would often spend the night there for multiple nights at a time. He would spend from 2 to 7 days a week at Frazier's house with the minor child depending on how well he and Frazier were getting along. After July 2021, Bradshaw and Frazier ended their relationship, which led to fluctuations in Bradshaw's visitation time.

Bradshaw testified that after his relationship with Frazier ended, his visits were dictated by Frazier. Visits would mostly happen at her house. In September 2021, Bradshaw began a romantic relationship with another woman. Bradshaw testified that after Frazier found out he was dating another woman, she would not let him visit their child if he was going to be with his new girlfriend.

*Frazier Gets Job in Las Vegas, Nevada.*

In late 2021, Frazier began applying for jobs nationally and by the time of trial had received three separate job offers in Nevada. The first two offers were rescinded because Frazier was not living in Nevada at the time. The third offer was pending at the time of trial.

Frazier received notice of the third offer of employment on February 14, 2022. Her new job would pay $3,000 more annually than her current job, and she considered it a promotion from her current job with more opportunities for promotions. Frazier began planning to move, she signed a lease for a home in Nevada, and put her home in Nebraska up for sale.

Bradshaw testified that he did not want Frazier to move to Nevada with their minor child, but if she did, he wanted them to establish a parenting plan first. Frazier testified that at the time, she refused to establish a parenting plan prior to moving to Nevada, because she did not know what the minor child's school schedule would look like. Ultimately, this disagreement, along with a lack of visitation opportunities, led Bradshaw to file a complaint to establish custody and parenting time on February 24, 2022. Frazier sold her house in Nebraska and signed a lease on a home in Nevada in March. Shortly thereafter, she moved her belongings to the new home in Nevada.

Bradshaw discovered that Frazier moved to Nevada when he called the minor child one day in March 2022 and discovered them to be in the car. Frazier had also posted about the move on her social media accounts. Frazier stated she did not move to Nevada in March; she was only there for 4 days to take her belongings to the house she had leased because her home in Omaha had sold.

*Temporary Orders and Request for Expedited Trial Date.*

Bradshaw filed a motion for temporary relief on March 2, 2022, in which he asked the court for a "possession schedule" consistent with joint legal and physical custody of the minor child. Frazier also filed a motion for a temporary order, in which she asked the court to award her temporary sole custody with supervised visitation for Bradshaw. She also requested an order allowing her to remove the child to Nevada, an order that required Bradshaw to pay child support

during the pendency of the case, for mutual and reciprocal restraining orders for her and Bradshaw, and an order that required Bradshaw to pay temporary attorney fees.

After a hearing was held on March 29, 2022, the district court denied Frazier's temporary motion to remove the child to Nevada. The district court ordered Bradshaw and Frazier to engage in settlement negotiations and return in 2 weeks.

At the end of the 2 weeks, the district court held another hearing on April 12, 2022. It awarded the parties temporary joint legal and physical custody of the minor child, on a "2-2-3" schedule in which each parent would have physical custody for two regular weekdays and the parents would alternate 3-day weekends. The parties were ordered to split relevant costs, such as childcare expenses.

On May 12, 2022, Frazier filed a motion for counseling and to set a trial date, in which she requested an order that allowed her to enroll the minor child into counseling. She also requested an expedited trial date in part because Bradshaw had refused to pay daycare and other expenses.

*Dismissal Due to Lack of Prosecution and Removal of Child to Nevada.*

On June 27, 2022, both parties received a notice of intent to dismiss. The notice provided that each party had 30 days to submit a completed proposed scheduling order (PSO) to the court or the case would be dismissed for lack of prosecution. The notice also clarified that if the case was dismissed, the court assigned to the case could reinstate it at its discretion. It provided instructions on how a party could reinstate the case.

Also on June 27, 2022, the district court filed an order that allowed Frazier to enroll the minor child into counseling. The order noted a hearing was held in chambers and was not placed on the record. It set another status hearing for August 9, at which time a trial date was to be assigned.

On August 2, 2022, neither party had filed a PSO, so the case was dismissed, despite the August 9 hearing date currently scheduled. On August 3, Frazier took the minor child to Nevada, and testified that when she left for Nevada the second time, she had no intention of returning to Nebraska. Frazier testified that she had no plan of leaving for Nevada prior to the dismissal; rather, she only began preparing to move once she found out the case was dismissed. August 3 was supposed to be Bradshaw's parenting day; however, he would not see the minor child again until August 15.

On August 5, 2022, Frazier filed a verified complaint in the Family Division of the Clark County District Court in Nevada. In her complaint, Frazier stated that the Nevada court had emergency jurisdiction over her minor child because Bradshaw had abandoned him. She requested the Nevada court grant her sole legal and physical custody with reasonable visitation for Bradshaw at Frazier's discretion.

Also on August 5, 2022, Bradshaw filed a motion to reinstate the case. Frazier objected, arguing that the notice clearly set forth a procedure and steps necessary to maintain the case, yet Bradshaw failed to abide by that procedure. Since the case was dismissed, Frazier had moved to Nevada and through local counsel, filed a separate case there. She stated that reinstatement of the Nebraska case would "cause extreme prejudice" because the statute of limitations had now run on Bradshaw's original action.

*Case Reinstated.*

The district court held a hearing on the motion to reinstate on August 9, 2022, and immediately reinstated the case. It ordered Frazier to return the minor child to Nebraska by 6 p.m. the next day and indicated if Frazier failed to do so, contempt proceedings would begin. It also awarded Bradshaw sole legal and physical custody over the minor child. The district court admonished Frazier, stating,

> If the minor child is not returned to the State of Nebraska, then we will immediately start contempt actions, at which case I will – and I will not hesitate and using the full authority and power of this Court to make sure at that point that Stephanie Frazier is held accountable for her actions. I have not seen a more deceitful underhanded and fraudulent domestic case in my seven years of practice. This is appalling the laws of the State of Nebraska and the laws of this country have been shame fully [sic] disregarded by these actions.

In response to a motion to reconsider, the court extended the child's return date to August 15, 2022, but denied any further relief. Despite the district court's order, Frazier did not timely return the minor child to Bradshaw. Bradshaw called Frazier on August 15 and she informed him that she believed she was to return the child the next day. Bradshaw contacted the police and Frazier eventually brought their minor child to Bradshaw's residence that evening.

After Frazier returned the minor child to Bradshaw, Bradshaw allowed Frazier to visit with the child later that same week. Frazier filed a motion requesting a temporary order for parenting time, and the district court reinstated the 2-2-3 parenting plan, which was to resume on September 1, 2022.

*Custody and Parenting Time Trial.*

The district court held the custody trial on November 29, 2022. At trial, Frazier claimed that Bradshaw did not assist financially with the minor child. She testified that she paid for everything, including food and clothing, and Bradshaw would only pay an occasional utility bill or for incidentals like winter boots. Bradshaw countered that when he was living in Frazier's house, they paid for expenses as they came, but admitted he did not help pay the mortgage. He testified that after he moved out, he would help pay for daycare costs, and bring items, like fruit and juice, when he visited. He also conceded he was not up to date on his daycare payments because he was briefly unemployed. Bills totaling $405 that Bradshaw still owed Frazier were admitted into evidence.

According to Bradshaw, he moved into an apartment after his relationship ended with Frazier. He converted the master bedroom into a room for his children. There are three twin beds with dressers in the room for each of Bradshaw's sons. Bradshaw testified when the boys are present, he sleeps on the couch. Bradshaw acknowledged that prior to filing this custody action, the minor child had only spent the night with him twice since the parties' separation in July 2021. He testified that Frazier only allowed visitation at her leisure, and visits were difficult at times when he would get off work late. Bradshaw also informed the court that he had recently been hired for a new job, and this job was going to work better with his parenting time schedule.

Bradshaw testified that he has a good relationship with the minor child and always looks forward to seeing him. He expressed his desire for the minor child to stay in Nebraska because it allows the minor child to be around Bradshaw's family and gives the minor child more opportunities to be with him.

Bradshaw articulated that he believed if Frazier was allowed to move to Nevada, it would be detrimental to the minor child's relationships with him, the child's brothers, and other family members who live in Nebraska. He described his desire for all three of his sons to have a strong relationship with each other. Moving to Nevada would preclude the minor child from being able to participate in family functions in Nebraska that he would otherwise participate in, such as visiting his great-grandparents for Halloween.

Frazier claimed that she had always been the minor child's provider, so it was in his best interest that she be able to take him to Nevada. She did not believe she was preventing the minor child from having a relationship with Bradshaw by moving to Nevada; rather, she explained that she provides stability and routine, and the minor child has a very close bond with her.

Frazier testified that she was the only one taking the minor child to doctor and dentist appointments. She recalled Bradshaw had attended only four out of a possible forty-two medical appointments for the minor child. He also did not attend any doctor's appointments with her while she was pregnant with the child. Bradshaw complained that Frazier usually informed him of appointments the day before they occurred, and text messages were admitted into evidence that confirmed Bradshaw's contention. Frazier countered that those appointments in the text messages were usually emergencies, and she would give him more notice for the minor child's yearly appointments.

Frazier believed that Nevada would be a better place for the minor child. She had researched schools in Clark County, Nevada, and found a school for the minor child to attend, which she believed to be the best fit for him. She testified that from her own experience and research, Omaha, Nebraska, schools were "slower, like, on curriculum," so sending the minor child to a school in Nevada would provide a better educational experience. Frazier also found potential pediatricians and counselors for the minor child in Las Vegas.

Frazier defended the claim she made in her Nevada complaint that Bradshaw had abandoned the minor child. She testified that she believed Bradshaw had abandoned the minor child by allowing the Nebraska case to be dismissed, which she interpreted to represent Bradshaw's lack of interest in parenting the child further. However, she admitted that Bradshaw was caring for the child during the pendency of the case and was a good father. She testified that the Nevada filing was an emergency because she did not know what Bradshaw would do when he discovered she moved to Nevada. She was concerned that Bradshaw may try to get full custody of the minor child out of spite.

Both parties admitted that the other parent is a good parent. Frazier submitted a proposed parenting plan and child support calculation to be implemented if the district court allowed her to take the child to Nevada. She testified that if she was not able to take the child to Nevada, then she would join Bradshaw's request for joint legal and physical custody on a 2-2-3 schedule. Bradshaw asked that the district court maintain the current order of a 2-2-3 parenting plan and for the minor child to stay in Nebraska.

After the case was submitted, the record was reopened because the parties had agreed to a stipulation. The stipulation provided that Frazier could temporarily continue living in Iowa until she could find permanent housing in the Omaha metro area, and the minor child would attend school in the Omaha metro area. The parties also prepared a child support calculation that was admitted into evidence. Lastly, the court made a finding per the testimony of the parties that Bradshaw was the father of the minor child.

*District Court's Order.*

The district court made a summary ruling from the bench at the close of trial. Basing its analysis on *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), it determined that Frazier failed to prove a legitimate reason for removing the child to Nevada. It further found that the remaining *Farnsworth* factors either weighed against removal or were neutral. In a written order, the district court iterated that Frazier had failed to meet her burden to remove the minor child to Nevada. It found that Frazier did not present legitimate reasons for leaving Nebraska for Nevada, as she did not provide evidence to show the job in Nevada constituted an improvement to her current employment. It also found that it was in the best interests of the child to stay in Nebraska based on three broad considerations: the parents' reasons for seeking or opposing the move, the potential the move holds for enhancing the child and custodial parent's quality of life, and the impact of a move on contact between the child and the noncustodial parent.

The district court made credibility findings of fact both on the record and in its written order. It found that Bradshaw testified in a credible manner but Frazier did not. It explained that Frazier lost credibility in part because she had lied about Bradshaw abandoning their child as a means for the Nevada court to attain jurisdiction. It surmised that Frazier had tried to seize upon the automatic dismissal by filing for sole legal and physical custody in Nevada, despite being aware that there was a possibility the Nebraska case would be reinstated. It also found disingenuous Frazier's claim that she was not planning to leave Omaha but when she saw the case had been dismissed, she made the decision to move to Nevada the very next day. Since there was a parenting plan in place and the district court had previously denied Frazier's request to remove the child to Nevada, it found that Frazier must have planned that if the case was dismissed, she would leave for Nevada, hire an attorney, and file her case in the Nevada courts.

The district court awarded Bradshaw and Frazier joint legal and physical custody. It concluded that Frazier did not demonstrate a legitimate reason for leaving the State of Nebraska and it denied Bradshaw's request for sole legal and physical custody. It ordered regular parenting time subject to a 2-2-3 arrangement, as well as a court created parenting plan. It also ordered Bradshaw to pay the $405 for previous medical care and day care expenses. Frazier appeals.

## ASSIGNMENTS OF ERROR

Frazier assigns the district court abused its discretion by reinstating the case and awarding Bradshaw joint legal and joint physical custody of the minor child. Frazier also assigns the district court demonstrated personal bias and prejudice against her.

STANDARD OF REVIEW

The decision to vacate an order any time during the term in which the judgment is rendered is within the discretion of the court; such a decision will be reversed only if it is shown that the district court abused its discretion. *Schaaf v. Schaaf*, 312 Neb. 1, 978 N.W.2d 1 (2022).

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned. Neb. Rev. Code of Judicial Conduct § 5-302.11(A).

ANALYSIS

*Case Reinstatement.*

Frazier first assigns that the district court abused its discretion by reinstating the case. She argues that the district court should have denied Bradshaw's motion to reinstate because the statute of limitations precluded another suit. She also argues that the district court's decision to reinstate the case was not exercised reasonably in accordance with the facts and circumstances of the case.

> In District 4, where the Douglas County district court sits, the local rules provide
>
> Progress of all cases shall comply with the Case Progression Standards established by Neb. Ct. R. § 6-101. To facilitate compliance, a Proposed Scheduling Order (PSO) shall be submitted to the District Court Administrator in all non-criminal cases within four months after filing of the case. The PSO shall be submitted by agreement of the parties. However, if the parties cannot agree, any party to the pending action may submit a PSO and set the matter for hearing before the Court assigned to the case. If a PSO is not submitted within four months, the District Court Administrator shall give notice by mail or email to each party that within 30 days from the date of the notice, the matter will be dismissed unless a PSO is submitted to the District Court Administrator.

Rules of Dist. Ct. of Fourth Jud. Dist. 4-10 (rev. 2022). The Nebraska Supreme Court's case progression standards provide that 90 percent of civil cases should be disposed of within 12 months and 98 percent of civil cases should be disposed of within 18 months. See Neb. Ct. R. § 6-101(A) (rev. 2016).

A district court has the inherent power to dismiss a case without prejudice for failure to prosecute. See *Talkington v. Womens Servs.*, 256 Neb. 2, 588 N.W.2d 790 (1999). The power to invoke this sanction is necessary to prevent undue delays in the disposition of pending cases and to avoid congestion in the trial courts. *Schaeffer v. Hunter*, 200 Neb. 221, 263 N.W.2d 102 (1978). District courts must be given wide discretion to ensure the timely disposition of cases is reached in a manner consistent with fairness to all parties. See *Talkington v. Womens Servs., supra*. This discretion must be exercised reasonably and not arbitrarily. See *Beliveau v. Goodrich*, 185 Neb.

98, 173 N.W.2d 877 (1970). Each case must be looked at with regard to its own peculiar procedural history and the situation at the time of dismissal. *Talkington v. Womens Servs., supra*.

The Supreme Court has provided four factors to assist in determining whether good cause exists for a case to be reinstated. Whether a new suit would be barred by the statute of limitations is an important consideration, but it cannot on its own establish an abuse of discretion in dismissing a case. See *Schaeffer v. Hunter, supra*. Other relevant considerations in caselaw are the length of delay, excuses for that delay, and if there were previous dismissals for lack of prosecution that have been entered and rescinded. *Id*. In the absence of good cause, a litigant's failure to prosecute a civil action, resulting in noncompliance with the Supreme Court's progression standards for civil actions in the district courts, is a basis to dismiss an action for failure to prosecute. *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015). The meaning of good cause must be determined in light of all the surrounding circumstances. *DeVries v. Rix*, 203 Neb. 392, 279 N.W.2d 89 (1979).

Here, the district found that the parties were actively prosecuting the case at the time of dismissal, and there was an upcoming hearing to set a trial date scheduled a week after the case was dismissed. Bradshaw explains in his brief that he "did not give excuses for the administrative dismissal, but instead timely filed a Motion to Reinstate a few days after the dismissal." Brief for appellant at 8. We note that at the hearing on the motion to reinstate Bradshaw explained that it was his "understanding that this was inadvertently kicked, these things get dismissed and that doesn't excuse anything on this matter, but this action has been progressing." Frazier contends that since Bradshaw's counsel thought the case "was inadvertently kicked" and allowed the case to get dismissed, he could not show good cause. In light of the surrounding circumstances, we find that Bradshaw showed good cause through the other three factors.

The case was dismissed pursuant to the district court's local rules that provide parties must submit a PSO within 4 months of the filing of the complaint. In those 4 months, this case had been actively litigated, so there was no delay present. The case was filed on February 24, 2022, and dismissed on August 2. In that time, the parties attended multiple hearings, the district court issued an order providing the parties with a temporary parenting plan, and Frazier had a scheduled hearing on her motion to set a trial date. The case was not in danger of exceeding the case progression standards, as even with the dismissal, the case concluded in less than 12 months. Furthermore, there were no previous dismissals in this case.

Frazier argues the statute of limitations would have precluded Bradshaw from filing another lawsuit and therefore the court abused its discretion in reinstating it. She relies on Neb. Rev. Stat. § 43-1411 (Cum. Supp. 2022), which provides a civil proceeding to establish paternity of a child can be brought by:

(a) The mother or the alleged father of such child, either during pregnancy or within four years after the child's birth, unless:

(i) A valid consent or relinquishment has been made . . . for purposes of adoption; or

(ii) A county court or separate juvenile court has jurisdiction over the custody of the child or jurisdiction over an adoption matter. . . .

- 8 -

Frazier explains that "paternity proceedings are purely statutory, and because such statutes modify common law, they must be strictly construed." Brief for appellant at 10. She concludes that because none of the exceptions listed in the statute above apply to this case, then the statute of limitations strictly applies; thus, the district court abused its discretion in reinstating the case.

Frazier's argument is without merit because the statute of limitations is but one consideration upon which the court should rely. And even if the statute of limitations would preclude a future suit, reinstating the case simply put the parties back in the same position that they had been in prior to the dismissal. See *Fidler v. Life Care Centers of America*, 301 Neb. 724, 919 N.W.2d 903 (2018) (explaining that reinstatement of case is not final appealable order because order merely put parties back into position they had been in prior to dismissal). The law favors full opportunity for the parties to fully litigate the issues. See *Carrel v. Serco Inc.*, 291 Neb. 61, 864 N.W.2d 236 (2015). Implying a preference for addressing a case on the merits, the Supreme Court has stated that a much stronger showing is required to substantiate an abuse of discretion when an order dismissing a case is vacated than when it is not. See *Talkington v. Womens Servs.*, 256 Neb. 2, 588 N.W.2d 790 (1999). Hence, we view the preclusion of a future suit as a factor weighing in favor of reinstatement, although not conclusive.

Altogether, the statute of limitations would bar Bradshaw from refiling, there was not a substantial delay in the proceedings, and there were no previous dismissals. The notice of intent to dismiss was sent on the same day the parties appeared for a hearing in which a future hearing was set. Bradshaw filed his motion for reinstatement 3 days after the case was dismissed, which minimized further delay. Overall, the factors favor reinstatement, and the district court did not abuse its discretion by reinstating the case.

*Joint Custody Award.*

As a preliminary issue, we note that the district court applied the wrong standard when it considered Frazier's request to remove the child to Nevada before determining custody. Because the child was born out of wedlock and there had been no judicial determination of child custody prior to the proceeding, the district court should have determined the custody issue before addressing removal. See *Franklin M. v. Lauren C.*, 310 Neb. 927, 969 N.W.2d 882 (2022). Instead, the district court performed a strict application of the factors laid out in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), but *Farnsworth* is not applicable to an initial determination of custody. See *Franklin M. v. Lauren C., supra*. Although it is not improper to consider the *Farnsworth* factors in a case seeking removal of a child born out of wedlock concomitant with an initial custody determination, the issue in such a circumstance is not whether a parent should be able to relocate with a child, but which parent should be awarded permanent custody of the child as a matter of initial judicial determination. See, *Franklin M. v. Lauren C., supra*; *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004); *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009).

We find the district court erred as a matter of law when it applied the wrong standard to place the burden on Frazier in its consideration of her request to remove the child to Nevada. Rather than requiring Frazier to initially show that she had a legitimate reason to move to Nevada, the court should have made an initial custody determination based on parental fitness and the child's best interests by considering evidence presented by both parties, including evidence related

to Frazier's plans to move the child to Nevada and Bradshaw's evidence regarding the effect of such a move on the exercise of his parental rights.

We review child custody determinations de novo on the record. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Despite applying a different standard, we reach the same conclusion as the district court; thus, we find the district court did not abuse its discretion in awarding Bradshaw and Frazier joint custody of the minor child.

When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Id.*

The Parenting Act also provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance and which promotes a child's continued contact with their families and parents who have shown the ability to act in the child's best interests. Neb. Rev. Stat. § 43-2923 (Reissue 2016). In addition to considering these statutory factors, our case law instructs that when making determinations as to the allocation of parenting time that is in a child's best interests, a trial court should also consider the parties' ability to communicate on issues such as transportation, homework, discipline, medical and dental appointments, and extracurricular activities. *State on behalf of Kaaden S. v. Jeffery T., supra.* Other relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. *Id*. The fact that one parent might interfere with the other's relationship with the child is also a factor to consider but is not a determinative factor. *Id*. No single factor is determinative, and different factors may weigh more heavily in the court's analysis depending on the evidence presented in each case. *Id*.

Here, the district court found it was in the minor child's best interests to stay in Nebraska, and to continue having equal parenting time with each parent via the 2-2-3 schedule that was temporarily implemented during the pendency of this case. Both parents admitted the other was a good parent. Furthermore, the district court found the evidence proved that both Bradshaw and Frazier had "done an exceptional job in promoting the emotional, physical, and developmental needs" of the minor child. And both parents provide foundation and stability to the minor child. The minor child was too young to have any input in preference, and there was no evidence presented at trial to indicate the minor child was subject to abuse.

Frazier argues it is not in the minor child's best interests for both of his parents to have joint custody because Bradshaw's relationship with the child is "substantially weaker" than Frazier's relationship with the child, which she testified to at the custody trial. Brief for appellant at 12. She also claims that Bradshaw has significant communication issues and does not help with visit scheduling and transporting the child to and from medical and dental appointments.

First, the district court found both parents fit, and it did not find that Bradshaw's relationship with the minor child was "substantially weaker" than his relationship with Frazier. Frazier's first argument essentially disputes the weight that the district court gave the evidence presented at trial, and when there is a conflict in evidence, an appellate court considers the fact

that the trial court heard and observed the witnesses and accepted one version of facts rather than the other. See *State on behalf of Kaaden S. v. Jeffery T., supra*. The district court found that Frazier was not credible based on her conduct after the case was dismissed. It also found that the minor child had "an established relationship" with Bradshaw, as well as his two older half-brothers. The minor child has spent over 50 percent of his life with Bradshaw, either during the time when Bradshaw and Frazier were still together, or through the visits after they separated. We find no abuse of discretion in the court's determination.

Second, the communication issues which Frazier identifies do not evince an abuse of discretion in the award of joint custody. See *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). There appeared at trial to be communication issues around medical appointments, as Bradshaw rarely attended them, and Frazier would usually give Bradshaw less than 24 hours' notice. Although the parties may have communication issues, the only time those communication issues directly impacted the minor child was after Frazier was ordered to return the minor child to Nebraska. Otherwise, the 2-2-3 schedule did not create any significant issues with parenting time, especially now that Bradshaw has a job that allows him to fully exercise his parenting time. Additionally, Bradshaw was able to communicate with Frazier to see that she received more parenting time than required by court order on Thanksgiving 2022, which shows the parties can work together. The communication issues between the parents are not enough to overcome the district court's finding that the minor child's best interests were served by his parents having joint custody.

We conclude the district court did not abuse its discretion in awarding joint legal and physical custody to Bradshaw and Frazier. Although Frazier argues on appeal that sole legal and physical custody would have been in the best interests of the minor child, at trial she requested joint custody if the court denied her request to remove the child to Nevada. She testified that if the district court ruled that she could not take the minor child to Nevada, then she would join Bradshaw's request for joint legal and physical custody with a 2-2-3 schedule. She stipulated at the end of the trial to temporarily remain in Iowa, until she could secure housing in Nebraska. The district court ordered what Frazier requested, and we cannot find that it abused its discretion in that order.

*Frazier's Claim of Bias and Prejudice.*

Frazier assigns the district court judge demonstrated such a "deep-seated antagonism" toward her that "rendering a fair judgment [would be] impossible." Brief for appellant at 10. Frazier argues because the district court judge "displayed outright hostility and vitriol" toward her, Frazier could not have received a fair and impartial decision from him. *Id*.

Under Neb. Rev. Code of Judicial Conduct § 5-302.11, a judge is disqualified whenever the judge's impartiality might reasonably be questioned. Under the code, such instances in which the judge's impartiality might reasonably be questioned specifically include where the judge has a personal bias or prejudice concerning a party or a party's lawyer. *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019). A judge must be impartial, their official conduct must be free even from the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action. *Id*. When evaluating a trial judge's alleged bias, the question is whether a reasonable person who knew the circumstances of the case would

question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023). It is presumed that all judges in Nebraska carry out their duties competently and diligently. *Id*. The party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming that presumption. *In re Interest of Michael N., supra*.

Frazier notes multiple examples to support her claim that the district court judge's bias and prejudice against her was prevalent. Frazier references the comments the district court judge made at the hearing on the motion to reinstate the case. However, Frazier's claims related to the comments made at this hearing are waived.

A party is said to have waived their right to obtain a judge's disqualification when the alleged basis for the disqualification has been known to the party for some time, but the objection is raised well after the judge has participated in the proceedings. *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017), *disapproved on other grounds, State v. Ezell, supra*. Despite Frazier's belief that the district court's comments at the August 9, 2022, hearing evince bias and prejudice, she never motioned for the district court to recuse itself prior to trial. The custody trial did not take place until November 29, yet she raises her bias argument for the first time on appeal. Given the delay, her claims of bias relating to the reinstatement hearing have been waived.

Frazier also relies on comments made at the conclusion of the trial and in the district court's order to support her assignment, notably the district court's statement that "It's clear, constant, and unequivocal in this case that [] Frazier left the great state of Nebraska with [the minor child] in direct violation of this Court's orders and in direct violation of the law of Nebraska." Frazier claims that because the case was dismissed, there was no court order to prevent her from moving to Nevada; therefore, the court's statements were incorrect.

Although the case had been dismissed when Frazier left Nebraska for Nevada, given the circumstances, there was a good chance it would be reinstated, especially since the parties had been actively litigating it and a hearing to set a trial date was scheduled to occur just 7 days later. The notice of intent to dismiss specifically set forth a procedure to reinstate the case if it was dismissed.

The district court's statement alone is not enough to overcome the high burden on a party seeking to disqualify a judge. When evaluating a trial judge's alleged bias, the question is whether a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness. Frazier had previously requested a temporary order allowing her to remove the child to Nevada and that motion was denied. Notwithstanding, she left the day after the dismissal was ordered, drove to Nevada, and 3 days later filed a new action in the Nevada court in which she claimed Bradshaw abandoned the child in an attempt to secure jurisdiction in the Nevada court. She testified at trial regarding her justifications for engaging in these acts and the court rejected them. With knowledge of the events and Frazier's reasons for having engaged in them, the court made its comments that Frazier now challenges. However, a reasonable person who knew this fact would not question the judge's impartiality based upon his display of displeasure with Frazier's actions. We reject Frazier's argument that the judge's comments call into question his judgment and impartiality.

- 12 -

## CONCLUSION

The district court did not abuse its discretion in reinstating this case or by awarding joint legal and physical custody of the minor child to both parents. Frazier failed to meet the high burden required to show that the district court's comments showed it was biased against her. Therefore, we affirm.

AFFIRMED.